## Ex Parte R. J. Allison.

### No. 3249.   Decided November 15, 1905.

**1.—Habeas Corpus—Injunction—Constitutional Law—Gaming.**

Under the act of the Twenty-ninth Legislature, page 372, an injunction may be granted on the application of a citizen to restrain a party from the use of certain premises as a gaming house, and to fine for contempt a person violating such injunction, and the Legislature was authorized to pass such an act authorizing such injunction although the same may involve the enjoining of the commission of a crime, and although the plaintiff so enjoining is not personally injured and no property rights are involved in the suit. Davidson, Presiding Judge, dissenting.

**2.—Same—Jurisdiction—District Court.**

Under the Act of the Twenty-ninth Legislature, page 372, to prevent by means of writ of injunction at the suit of the State or any citizen thereof the habitual

use, etc., of any premises, etc., for the purpose of gaming, etc., such suit for injunction can be brought in the district court.

### 3.—Same—Case Stated—Contempt.

Where on an application of a citizen, an injunction was granted by the district court restraining the relator from the use of certain premises as a gaming house, and thereupon the relator was fined for contempt for a violation of said injunction. Held that upon habeas corpus to the Court of Criminal Appeals, the relator should be remanded into legal custody.

From McLennan County.

Original application for habeas corpus for release from commitment for contempt for violating injunction restraining relator from running a gambling house.

The opinion states the case.

*N. B. Williams, Sluder & Neal,* for relator.—A court of equity will not enjoin crime simply because it is crime. A court of equity has not jurisdiction of crime and will not take cognizance of it simply because it is criminal. State v. Patterson, 14 Texas Civ. App., 465; Ex parte Warfield, 40 Texas Crim Rep., 413; York v. Yzaguairre, 71 S. W. Rep., 563; 11 Enc. of Law, 2 Ed., 196; 16 Enc. of Law, 2 Ed., 363; People v. District Court of Lake Co., 58 Pac. Rep., 604; State v. Schweickardt, 19 S. W. Rep., 51; Yellowstone Kit v. Wood, 43 S. W. Rep., 1068; Ex parte Sawyer, 124 U. S., 200; Schmidt v. West, 104 Fed. Rep., 272; Suess v. Noble, 31 Fed. Rep., 855.

The Legislature can not add to or take from the jurisdiction of the district court, and cannot by legislative act require or authorize the judiciary to exercise jurisdiction over any subject matter that they could not or would not exercise under the authority of the Constitution. Cobb v. Cochran, 26 S. W. Rep., 846; Ex parte Towles, 48 Texas, 413; Gibson v. Templeton, 62 Texas, 555; R. C Jennett v. Owens, 63 Texas, 261; State v. De Gress, 72 Texas, 242; Leach v. State, 36 Texas Crim. Rep., 248; Lytle v. Halff, 75 Texas, 128; Powell v. State, 17 Texas Crim. App., 345; Thomas v. Hill, 3 Texas, 270; Ex parte Grimrochio, 30 Texas Crim. App., 584; Ex parte Warfield, 40 Texas Crim. Rep., 413.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—This is an original proceeding on habeas corpus. It appears from the record that on the application of Minor Moore, an injunction was granted on August 5, 1905, by Hon. O. L. Lockett, judge of the 18th judicial district, restraining R. J. Allison from the use of certain premises in the city of Waco, as a gaming house. The writ was issued and made returnable before Hon. Marshall Surratt, judge of the 19th judicial district. Motion to dissolve was made, and the trial was had before Judge Surratt, who made the injunction permanent. Thereafter, relator Allison was arrested, and brought before said judge in a certain contempt proceeding on an

alleged violation of said injunction. The court on the hearing adjudged relator guilty of contempt, and by the judgment of the court a fine of $100 and three days imprisonment in the county jail was imposed. On account of this judgment, relator sued out the writ of habeas corpus before this court.

Inasmuch as the question here involved will bring in review the validity of the recent Act of the Twenty-ninth Legislature (see General Laws, page 373) we will quote so much thereof as we may deem necessary. The act is entitled, "An Act to prevent by means of the writ of injunction at the suit of the State or any citizen thereof the habitual use, actual, contemplated or threatened, of any premises, place, building, or part thereof, for the purpose of gaming or of keeping or exhibiting games prohibited by the laws of this State. Section 1. The habitual use, actual, threatened or contemplated use of any premises, place, building or part thereof, for the purpose of gaming or of keeping or exhibiting games prohibited by the laws of this State, shall be enjoined at the suit either of the State or of any citizen thereof. Any person who may so use, or who may be about to use, or who may aid or abet, any other person in the use of any premises, place or building, or part thereof, may be made a party defendant in such suit.

"Section 2. The Attorney-General and the several district and county attorneys shall institute and prosecute all suits that said Attorney-General or such district or county attorney may deem necessary to enjoin such use; provided that such suit may be brought and prosecuted by any one of said officers; and provided further, that nothing in the above proviso contained shall prevent such injunction from issuing at the suit of any citizen of this State who may sue in his own name, and such citizen shall not be required to show that he is personally injured by the acts complained.

"Section 3. The procedure in all cases brought hereunder shall be the same as in other suits for injunction, as near as may be," etc.

Relator contends, in the first place, that the district court did not have jurisdiction to grant said injunction, and consequently that the same was void and of no effect. Undoubtedly under our Constitution and laws, the district court did have jurisdiction to grant the injunction in this case. Anderson v. Kennedy, 58 Texas, 616. However, the contention is, that under the amendment of the Constitution, relating to county courts, that tribunal has jurisdiction of injunction, where the amount in controversy is within the jurisdiction of the county court. The contention here is that the operation of a gambling house, under our law is a misdemeanor, and within the jurisdiction of the county court, and that consequently the county court has jurisdiction of an injunction in regard to the keeping of gambling houses. It does not occur to us that this by any means follows, even if it be conceded that the county court had jurisdiction to grant the injunction, this jurisdiction was merely concurrent, and did not oust the jurisdiction of the district court, which is authorized to grant injunctions generally. The very

fact that no amount involved is stated, in the application for injunction, would suggest jurisdiction in the district and not the county court. If some amount within the jurisdiction of the county court had been stated, then it may be conceded that the county court would have had at least concurrent jurisdiction. We do not believe there is anything in this contention.

It is urgently insisted by relator that the injunction granted was without authority of law, because it was an attempt on the part of the court to enjoin the commission of a criminal offense. This contention may be conceded as a general proposition. State v. Patterson, 14 Texas Civ. App., 465; 37 S. W. Rep., 478; Ex parte Warfield, 40 Texas Crim. Rep., 413. However, the respondent insists that the grant of the injunction in this case was not an attempt to enjoin the commission of a criminal offense, but was an injunction granted against the use of property, the using thereof constituting it a nuisance; and furthermore respondent urges that, notwithstanding, under the English system of equity jurisprudence, which has come down to us, that courts will not enjoin the commission of crime as crime, yet it is entirely competent for the Legislature to create other matters the subject of equitable cognizance than those recognized under the general system of equity.

With regard to the first proposition, we believe it will be conceded that where property rights are involved, courts will issue injunctions notwithstanding it may embrace a crime; or if it should not be so conceded, we believe, on principle and authority, that this proposition can not be gainsaid. It will be noted that the act in question is aimed at the restraining of persons from using certain premises or buildings, for the purpose of gaming, or of keeping or exhibiting games prohibited by the laws of this State; and does not seek to punish such persons for so using said premises or buildings. As was said in Warfield's case, 40 Texas Crim. Rep., 413, "An injunction is a mere restraining order, and it will be presumed that the party against whom it is granted, will obey it as long as it continues in force; otherwise, as the issuance of the writ is a proper exercise of equity, he will move to dissolve it. A gambling house, under our statute and as recognized by our courts, is a nuisance, and even at common law, as we understand it, such a nuisance could be enjoined at the instance of any one who was injured thereby. Our statute enlarges this right, and assumes that any person within the jurisdiction is injured, and that he can make complaint and have the restraining order issued. Patterson v. State, supra, relied on by relator, recognizes the rule that a gambling house is a nuisance and can be abated; and that the writ will lie when property or civil rights are involved and some irreparable injury to such rights is threatened or about to be committed for which no adequate remedy exists at law. It is said further: "The injury threatened to such rights may if committed, constitute a crime and subject its perpetrator to punishment under the criminal law, yet, as his punishment would furnish him whose property or civil rights had been irreparably

injured by the acts constituting the offense no compensation for such injury, courts of equity will interfere to prevent such an injury, notwithstanding the commission would constitute a criminal offense, not because it would be a crime, but because the injury to such rights would be irreparable.  It cannot be said that such interference by a court of equity is an invasion into the domain of criminal law, for no crime has been committed where equity interposes its arm for the protection of property or civil rights.  In extending such protection, it may prevent a crime; but, as no one has a right to commit crime, no one should be heard to complain that he is restrained from its commission, when such restraint has been exercised in the jurisdiction of a court for the purpose of preventing him from irreparably injuring another in his property or civil rights."  The court in that case even recognizes the right of the State, through her proper officers, to enjoin a public nuisance, but that the State must show in such case that the nuisance is an injury to the property or civil rights of the public at large.  It was there held that the State did not show such injury to property or civil rights of the public, and that consequently it presented a criminal case, pure and simple, and an injunction would not lie.  This case was decided before the act of the Legislature upon which the injunction at bar was granted, was passed.  The act in question was evidently passed to meet the defects pointed out by the court.  Here it is provided that such injunction may issue at the instance of any citizen of the State, who is authorized to sue in his own name; and that such person shall not be required to show that he is personally injured by the acts complained of.  Now, if the Legislature was lawfully authorized to make the provisions in the law, as above pointed out, no one can question the legality of the writ of injunction; and it lies with those challenging the power of the Legislature to point out that provision of the Constitution inhibiting the Legislature from passing such an act.  And see Carleton v. Rugg, 6 Law, Rep. Ann., 153, and for authorities, 11 Amer. & Eng. Ency. of Law, pp. 195–197.  It must be presumed that the Legislature recognized that the use of such property for gaming purposes was injurious to the public welfare and morals of the community; and under its police power it had the right to enjoin such use.

It is no answer to the proposition to say that the party so enjoined might disregard the injunction and voluntarily commit the offense of keeping a gaming house, and so be subjected to punishment for such crime; and that therefore the court had no right to enjoin him.  Nor can it be said that because of the injunction he was deprived of the right of trial by jury.  We understand that under our blended system of law and equity, a person sued can, under certain forms of law, demand a jury, whether the case is one of legal or equitable cognizance: it all depends upon whether there were such facts in the case as that the person enjoined desired a jury to pass upon.  In this case no jury was demanded, and the question comes before us in the shape of a demurrer: the facts being admitted, and the sole question is as to the constitution-

ality of the act providing for the injunction. Of course, as to the matter of contempt, relator could not demand a jury. Crow v. State, 24 Texas, 12. But, as stated before, he could demand a jury as to any matter of fact involved in the injunction proceeding. Davis v. State, 24 Texas, 24.

In addition to this, we go farther, and hold that it is entirely competent for the Legislature to authorize the issuance of a writ of injunction, although it may ·involve restraining the commission of crime. That is, that the Legislature can enlarge the powers of courts of equity to grant injunctions. Our own statute regulating ·injunctions authorizes the issuance of writs of injunction under·the principles of equity; and moreover, authorizes the issuance of such writs when the party applying is entitled to the relief demanded, and such relief or any part thereof, requires the restraining of some act prejudicial to the applicant. (Rev. Civ. Stat., art. 2989.) This has been held to broaden the field of equity jurisdiction. Crawford v. Sumner, 91 Texas, 129; Ex parte Warfield, 40 Texas Crim. Rep., 413. As shown in the latter case, even in England, courts of equity are no longer required to search for rights of property on which to base its jurisdiction·to grant an injunction, as a statute has been passed enlarging the jurisdiction of courts of equity. In that jurisdiction, it is now held that English courts are entirely free to grant injunctions to protect personal rights, including the right of reputation, and injunctions against libel are in fact granted. Unless it can be shown that some constitutional provision is violated by the passage of this act, no one will question the power of the Legislature to authorize the issuance of such writ. We have heretofore seen that it is not violative of the Constitution in depriving a person of the right of trial by jury. Nor can it be said that it is not due course of law. There is nothing in our Constitution outlining or even suggesting any system of equity jurisprudence, so it was left entirely within the province of the Legislature to say what equitable powers it would give the courts. If it be conceded that the effect of the act in question is to restrain the commission of crime, still, there being nothing in the Constitution preventing the Legislature from doing this, they had authority to so legislate. In State v. Goodnight, 70 Texas, 682, our supreme court had this question under review. That was a case where appellee, Goodnight, had enclosed with a fence, school-land belonging to the State, and an injunction was granted in the suit requiring him to remove said fence from around said public lands. Among other things that court said: "But it is insisted, in the brief of counsel for appellee that the State has a plain, adequate and complete remedy, without resorting to the writ of injunction. We understand it to be claimed, in the first place, that because the act of February 7, 1884, makes the enclosure of the public lands a penal offense, and providing for the prosecution and punishment of offenses against it, that therefore a court of equity will not interfere. But this proposition cannot be maintained. Public nuisances were indictable at

common law, and yet were always subject to be enjoined." It is further held in that case, because appellant had the action of trespass to try title, which was a legal remedy, that the same was not adequate, but that the writ of injunction was a proper remedy. This question has been before the tribunals of other States, and so far as we are advised the holdings are all one way; that is, that the Legislature has power to authorize the issuance of a writ of injunction, though the effect of it may be directly to restrain the commission of crime. Littleton v. Fritz, 65 Iowa, 488; Eilenbecker v. Plymouth, 134 U. S., 31; Carleton v. Rugg (Mass.), 14 Amer. St. Rep., 446; State v. Saunders, 66 New Hamp., 39; Mobile v. Louisville Ry., 84 Ala., 115; 11 Amer. & Eng. Ency. of Law, pp. 195–197.

Littleton v. Fritz, supra, was an action in a court of equity for the issuance of a writ of injunction against the unlawful selling of intoxicating liquors. It was there held that said act was not repugnant to the Constitution, as depriving defendant of the right of trial by jury; nor as being an attempt by the Legislature to enforce a criminal law by a civil action; nor because it authorized any citizen of the county to maintain the action for injunction, without showing that he is especially damaged by the nuisance, that injunction was maintained. Among other things the court say: "And it must be remembered that defendant is not convicted and punished for a crime by the injunction. It belongs to that class of remedies which may properly be provided by statute to aid in the administration of preventive justice. It stays the arm of the wrong-doer; it does not seek to punish him for any past violation of the law. Its purpose is to prevent a public offense and suppress what the law declares to be a nuisance. The denial of a trial by jury is not as oppressive to the party charged, as the statute requiring a person who threatens to commit a public offense to give bond with sureties to keep the peace towards the people of the State, and, in default of giving the bond, committing him to prison. So far as we are advised, no one has ever claimed that the law requiring security to keep the peace was a denial of the right of trial by jury. The defendant, in order to succeed in the defense that the proceeding by injunction is an attempt to enforce a criminal law by civil process, demands, in effect, that the courts must establish the principle that, because the nuisance complained of is a crime, it is entitled to favor and protection in a court of equity. Such rule would not command the respect or approval of any one." And in further commenting on the authority of the Legislature to authorize a suit by any citizen, the court says: "It is surely within the power of the Legislature to designate the persons at whose suit a nuisance may be enjoined or abated. * * * The questions of policy or expediency in legislation are for the law-making power itself, and courts have no authority to interpose their judgment against that of the Legislature, upon the ground that the law in question may be inexpedient, or that some other enactment would better serve to accomplish the desired object."

In Eilenbecker v. Plymouth, supra, which was a proceeding before the Supreme Court of the United States, to review the judgment of the Supreme Court of the State of Iowa, it was held that under the laws of Iowa, the manufacture and sale of intoxicating liquors having been prohibited, it was competent to issue the writ of injunction to abate a place for the manufacture and sale of such intoxicants, as a nuisance. It is further held that it was entirely competent for the court to punish the party enjoined in a contempt proceeding, without the trial by jury, and that the same was "due process of law."

We do not deem it necessary to review the other cases cited, but believe all sustain the proposition above announced; that is, as to the authority of the Legislature to authorize an injunction which may involve enjoining the commission of crime. We accordingly hold that, upon both propositions the writ of injunction was properly granted; and the relator is remanded to the custody of the officer, with the costs taxed against him.

*Relator remanded.*

DAVIDSON, Presiding Judge (dissenting).—This is an original applicaton for writ of habeas corpus, granted in vacation, and made returnable before this court at the present term. The case may be thus stated, a temporary injunction was sought by Minor Moore against applicant to restrain him from running a gambling house in the city of Waco. Moore had no interest in the property, nor were his rights in any way affected by reason of games being played in the house of applicant. Judge Lockett, one of the district judges of the State, granted a temporary injunction, and made it returnable before Judge Surratt, district judge in McLennan County. Upon the hearing the motion to dissolve was overruled, and applicant enjoined from running his alleged gambling house. It is alleged that this injunction was disobeyed, and for this applicant was adjudged in contempt of court, fined $100, and allotted three days in the county jail.

The writ of injunction cannot be resorted to merely for the purpose of enjoining crime. Upon this proposition all authorities agree. There must be some question of property or civil rights involved, either public or private, "and the only distinction between a private and a public nuisance being that the one is an injury to such rights of an individual and the other to the rights of the public at large. The same principle must guide the interference of the court in both cases; and that principle is this, whether the extent of the damage and injury be such as the law will not afford an adequate and sufficient remedy." If it be conceded that the running of a gambling house is a nuisance of a public nature, then, in order to enjoin, it must be shown that such nuisance is an injury to the property or the civil rights of the public at large, which it is the duty of the State as the agent of the public to prevent. All that is shown here is that the applicant was guilty of keeping a gaming house. It was not shown nor attempted to be shown

that any property or civil rights of the public or of the individual are invaded; nor that any irreparable injury will be done any such rights by the maintenance of the gambling house. The case is purely and simply a criminal one, in which our laws furnish the only remedy which the courts are required to enforce. That the law against this offense may not be enforced or observed does not constitute a ground for resorting to the writ of injunction at the hands of a court of equity. Such a court has no jurisdiction to restrain the commission of crime; nor enforce moral obligations, nor the performance of moral duties; nor can it rightfully interfere with the performance of an illegal act, merely because it is illegal, in the absence of an injury to property or civil rights. State v. Patterson et al., 14 Texas Civ. App., 465.

That our laws afford an ample and full protection against the keeping of gambling houses is manifest by the provisions of article 389, Penal Code, which provides: "if any person shall permit any game prohibited by the provisions of this chapter to be played in his house or a house under his control, or upon his premises or premises under his control, the said house being a public place, or the said premises being appurtenances to a public place, he shall be fined not less than $25 nor more than $100." This clearly demonstrates the fact that it is a criminal offense to keep a gambling house, and it is the very offense here defined which was enjoined.

The injunction proceeding was sought by virtue of the act of the last Legislature (Acts 29th Leg., p. 372), the caption of which reads, "An act to prevent by means of the writ of injunction at the suit of the State or any citizen thereof the habitual use, actual, contemplated or threatened, of any premises, place, building, or part thereof, for the purpose of gaming or of keeping or exhibiting games prohibited by the laws of this State." This caption indicates that the injunction is provided for in cases where there are violations of the gaming laws. Not only so, but provides for enjoining contemplated violations of law.

The injunction granted by the trial court, and for the disobedience of which applicant was placed in jail for contempt, proceeds upon the idea that the Legislature and the courts, either or both are at liberty to enlarge the jurisdiction of equity so as to restrain or enjoin violations of the criminal laws, or threatened violations. This is an innovation. Such a doctrine has not heretofore obtained in this State. In England the courts of chancery have always refused to enjoin criminal prosecutions as such, and they were not bound by the restraints of a written constitution. Much less would the courts or the legislative bodies in Texas or the United States be authorized to do so, in the face of some of the provisions of our Constitution.

Our Bill of Rights (section 10) provides, "In all criminal prosecutions, the accused shall have a speedy public trial by an impartial jury." The act of the Legislature recently passed, proceeds in the face of this, and seeks to take away this authority of the Constitution, and authorizes

a judge, sitting as a chancellor, to try a party charged with crime, without the interposition of a jury. In other words, to enforce that Act, the courts would have to lay down the rule that a judge sitting as a chancellor has the right to pass upon the guilt or innocence of the defendant in an ancillary proceeding, which we call injunction, and find him guilty, and enjoin him from violating the law; and if he disobeys, to punish him for contempt.

The same section (10) of the Bill of Rights further provides, "No person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger." Where the punishment is by fine, or it is a misdemeanor punishable in the county court, under our procedure, it must be by information. This does not mean in a court of equity: it means upon a criminal information or complaint, or prosecution, in which appellant has the right of trial by jury. And this is further intensified by the provisions of section 15 of the Bill of Rights, which states, "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." But the Legislature, by the act in question, requires the courts of this State to substitute the writ of injunction for a criminal prosecution and the right of trial by jury. And now, my brethren, hold that the chancellor in an equitable proceeding can dispose of the gambling laws by injunction.

To sustain this act, and substitute the writ of injunction for a criminal prosecution and the right of trial by jury, under all that our law has guaranteed as incident to a speedy public trial, would be to subvert the fundamental principles of the Bill of Rights and the enforcement of the criminal laws of our country.

It would hardly be contended for a moment that a trial of criminal offenses under the writ of injunction by a chancellor would be in harmony with the provisions of our Constitution, above quoted. We have deemed it unnecessary to cite authorities in support of this proposition. It has been so long settled; so thoroughly understood, that it has become axiomatic. It follows, therefore, that the injunction proceedings were void; the judgment rendered under this proceeding was void; and being void, the action of the court, placing applicant in contempt was necessarily void. This has been the rule in Texas, well settled by all the cases since Ex parte Degener, 30 Texas Crim. App., 566.

I have not thought it necessary to elaborate these questions, nor cite and review cases, because it is so clearly beyond the scope of equity and the writ of injunction to try criminal cases, that the statement of the proposition carries conviction without argument. The conscience of the chancellor cannot be substituted for a trial by jury, nor for the provisions of the organic law.

Therefore, I dissent.