## EX PARTE P. GARZA.

No. 3294.   Decided May 23, 1906.

**1.—Habeas Corpus—Injunction—Gaming—Statutes Construed—Contempt.**

The rule is that the Court of Criminal Appeals will not interfere by writ of habeas corpus or otherwise with judgments for contempt of subordinate courts for disobedience of an injunction, unless it is shown that the court below either did not have jurisdiction of the subject matter or the person of the defendant, or the authority to render the particular judgment. It is competent for a district judge at the suit of any citizen of the county to enjoin the use or contemplated use

of a building or part thereof for the use of gaming, without showing that the citizen was personally injured.

**2.—Same—Case Stated.**

Where upon habeas corpus proceedings before the Court of Criminal Appeals, which were brought by relator who was held in contempt by the district court under the Act of the Twenty-ninth Legislature, page 372, authorizing grants of writs of injunction on the application of any citizen, restraining the use or contemplated use of a certain place or building for the purpose of gaming, for violating said injunction, the evidence showed that the room occupied by the relator as a saloon had no business connection with a gambling hall which could be reached by way of said saloon, and that the two establishments had different rent contracts, and that relator had no control of said gambling hall. Held, that the district court had no power or authority to adjudicate relator guilty of contempt under injunction proceedings.

From Bexar County.

Original application for habeas corpus for release from. a commitment for contempt of violating the writ of injunction restraining the use of a certain building for the purpose of gaming.

The opinion states the case.

*Terrel, Hopkins & Terrel,* for relator.

*Robert B. Green,* for respondent.

HENDERSON, Jugde.—This is an original proceeding by habeas corpus, the writ having been granted by this court, in a certain contempt proceedings from the District Court of the 57th judicial district, Bexar County. Hon. Robert B. Green filed a suit in said district court on April 21, 1906, under the Act of the Twenty-Ninth Legislature, p. 372, authorizing the granting of writs of injunction on the application of any citizen of the county, restraining the use or contemplated use of certain places or buildings or parts thereof for the purpose of gaming, or for keeping, or exhibiting games prohibited by the laws of the State. The writ of injunction as prayed for was granted and the relator, P. Garza, was restrained by an order of the court from using or permitting the use of certain premises described, as the Western-Star-Saloon, at the northwest corner of West Commerce and Laredo streets in said city of San Antonio, and said house being numbered 801 West Commerce street, for gaming purposes. Said writ of injunction was served on relator about 8 o'clock on the evening of the 21st of April, 1906.

The proof in the court below, and which is also adduced in this court, was to the following effect: Relator was proprietor of the Western-Star-Saloon, situated at the northwest corner of West Commerce and Laredo streets in San Antonio. The building in which his saloon is situated may be described, as follows: Immediately at the northwest corner is the saloon; just in rear of it is a hallway, and in rear of this hallway, fronting on Laredo street, is a hall; and in rear of this was situated a cock-pit. The saloon room had a door on West Com-

merce street, and one on Laredo street. There is also a door opening from the saloon into the hallway in the rear. There is another door or opening, not exactly opposite this, leading from the hallway into what was called the "hall," and back of this was a yard or room where the cock-pit was situated. In the rear hall, occupied by Ogden, were two doors opening on Laredo street; but these were not kept open. There was a door from the rear hall opening into the cock-pit. Garza ran the saloon, and Ogden ran the rear hall as a gambling place; and the cock-pit was rented by Garza. After the service of the writ, and during the night of the 21st of April, and until about 2 o'clock, the saloon was kept open and run, and the gambling hall was kept open. Parties were shown to have passed through the saloon and through the intervening hallway between the saloon and gambling hall, into the gambling hall; both going into the gambling hall and through there into the cock-pit. The proof is to the effect that the usual mode of entering the gambling hall was through the saloon, though this could be approached through the cock-pit. Also that there were two openings from the gambling hall onto Laredo street, but these were closed at the time. It was proved that Garza rented the front room as a saloon from Welsh (the owner), through his agent, Wash; and that Ogden rented the gambling hall, by a separate rental contract, from the same agent, Wash, paying 25 to $30 per month therefor. On the alleged violation of said writ of injunction, relator was brought before the district judge who granted the writ, for contempt, and on the proof he was adjudged guilty of contempt, and his punishment assessed at a fine of $100 and three days imprisonment in jail. On account of that judgment he sued out his writ of habeas corpus as before stated.

Respondent contended in the court below, as he does here, that notwithstanding the rental contracts were separate, that relator had control of the gambling hall, or had an interest in the same, and that said separate rental contract was merely colorable, and that he could have obeyed said writ of injunction, and was bound thereby. On the other hand, relator insists that he only rented the front room for a saloon; that he was not interested in any manner whatever in the renting of the hall used for gambling purposes; that he had no control of the same, and as to that room he was not bound by said writ of injunction.

We understand the rule to be, that this court will not interfere by writ of habeas corpus or otherwise, with judgments of subordinate courts of contempts for disobedience of an injunction, unless it is shown that the court below, either did not have jurisdiction over the subject matter or the person of the defendant, or the authority to render the particular judgment. If either of said essential elements are lacking, the judgment is fatally defective. See this question thoroughly discussed and the authorities reviewed in Ex parte Degener, 30 Texas Crim. App., 566. We understand this may be made mani-

fest where the court did not have authority to adjudicate the particular matter a contempt under any circumstance; or where the court might adjudicate the particular matter a contempt under some circumstances, and the evidence discloses an utter want of power to treat the matter as a contempt. The particular statute in question, under which the injunction proceedings were instituted, was before this court in Ex parte Allison, 90 S. W. Rep., 492, and also before the Supreme Court in Ex parte Allison, 90 S. W. Rep., 870. In both of said cases, it was held that it was competent for a district judge at the suit of any citizen of the county to enjoin the use or contemplated use of a building or part thereof, for the purpose of gaming, etc., at the suit of any citizen, and that such citizen was authorized to sue in his own name, and was not required to show that he was personally injured by the acts complained of. Of course, both decisions are predicated upon the proposition that the person enjoined owned the building or part thereof, or had control of such building or part thereof, on account of which he was enjoined. The question here presented is, did the relator own or have control of the gambling hall, where the gambling is shown to have occurred, situated in the rear of his saloon. As we understand, it is conceded by the respondent, that unless the testimony showed or tended to show that he was the owner or had control of said room, he cannot be punished for contempt, although said hall or room was used for gambling purposes. That is, he must be shown to have occupied such a relation to said room, as that he could comply with the order of the court and have prevented its use. If he did not have such control, then the court had no power to render against him the particular judgment it did render. We understand it to be conceded in this connection that the two rooms occupied by the respective parties—relator occupying the saloon and Ogden occupying the gambling hall—was by separate and distinct rentals.

Respondent, however, contends that the facts adduced before the lower court authorized the judge to find that relator had an interest in said gambling hall, giving him such control thereof as made him amenable to the writ of injunction in relation thereto. These facts he marshals as follows: that he rented the front room as a saloon, and that the license authorized him to pursue his vocation at 801 West Commerce street; and that he also rented the cock-pit, beyond the gambling hall. That he sold beer from his saloon, and had it conveyed into said gaming room during that night; that his saloon was used during that night as a place of ingress and egress into said gambling hall, and it was the ordinary way of getting into said gambling hall, although there may have been other means of ingress and egress to the same. That the rent money was sometimes left by Ogden with the bar-tender, and the money paid through him and receipt taken. Relator at the time the writ of injunction was served on him asked the officer, "if we can keep open until 1 or 2 o'clock." If there are other facts upon which control or interest in the gambling room by

relator is claimed, we fail to recall them. If these facts stated put relator's control of said gambling hall, or his interest therein, in issue, so that the court might have decided the question either way as a matter of fact, then it may be conceded that the court had jurisdiction to render the particular judgment--it did, and this court would be without authority to interfere. If, on the other hand, the facts utterly failed to show that relator had control of said room, or that he had an interest therein and that the ostensible rental of Ogden was merely colorable, then this court is authorized to interfere on the ground that the district judge did not have the power to adjudicate relator guilty of contempt, in doing or failing to prevent the doing of a thing over which he had no control and had no power to prevent. As stated before, it is conceded that relator only rented the saloon room, and that Ogden rented and paid the rental for the gambling hall.

Under such circumstances could the court below have enjoined relator from keeping the rear door of his saloon open, which led into the hall, and thence through another door into the gambling hall  Or could he have been enjoined from selling beer to persons whom he knew or had reason to believe were violating the gaming law  If the court had no authority to make him close his own room, and shut off his customers, we fail to see how it could punish him because others may have used his saloon as a passway in going to the gambling hall, or because he may have sold drinks to those who were engaged in the gambling. The fact that he asked the officer who served the writ on him, if he could keep open, or if we could keep open until 1 or 2 o'clock, evidently referred to his own room, and neither of itself nor in connection with the other facts introduced against him showed or even tended to show that he had control of the gambling hall. In our opinion the facts adduced before the lower court did not put in issue relator's control of said gambling hall, but showed that the same was exclusively within the control and management of Ogden. We hold that the judge had no power or authority to adjudicate relator guilty of contempt. This is a summary remedy, and must be pursued strictly. Under the authority given by the Legislature, an additional remedy is afforded to prevent the use of buildings as gambling halls, and as shown by the evidence in this case an injunction would hold good either against Ogden (who it seems was released) or against Welsh (owner of the building) or his agent Wash. The remedy furnished is adequate, but it only applies to those who own or have some control over the premises.

Relator is ordered discharged.

*Relator discharged.*

Brooks, judge, absent.