CAMPBELL v. PEACOCK.  (No. 5521.)

(Court of Civil Appeals of Texas. San Antonio. May 5, 1915.)

1. NUISANCE ⊚═75—ABATEMENT—DISORDERLY HOUSE—PLAINTIFF—INJURY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4689, providing that the use of any place for keeping a bawdyhouse shall be enjoined at the suit of the state, or any citizen thereof, a citizen, to maintain the suit, need not be injured in his property rights.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184; Dec. Dig. ⊚═75.]

2. NUISANCE ⊚═75—ABATEMENT—DISORDERLY HOUSE — COMPLAINT — DESCRIBING PLAINTIFF.

The complaint, in a suit, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4689, to enjoin use of a place for a bawdyhouse, alleging that plaintiff is a citizen, all that is necessary to authorize him to maintain the suit, it is immaterial that it describes him as the head of a neighboring educational institution.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184; Dec. Dig. ⊚═75.]

3. NUISANCE ⊚═75—ABATEMENT—DISORDERLY HOUSE—COMPLAINT—REMEDY AT LAW.

Plaintiff, in a suit under Vernon's Sayles' Ann. Civ. St. 1914, art. 4689, to enjoin the keeping of a bawdyhouse, need not plead that he has no adequate remedy at law.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184; Dec. Dig. ⊚═75.]

4. STATUTES ⊚═64—PARTIAL INVALIDITY—EFFECT.

The main purpose of Vernon's Sayles' Ann. Civ. St. 1914, art. 4689, being to give authority to the state, or any of its citizens, to enjoin the keeping of bawdyhouses, any unconstitutionality of the part attempting to create an exception by recognizing authority of certain districts to create segregation districts does not invalidate the remainder.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ⊚═64.]

5. CONSTITUTIONAL LAW ⊚═87—INJUNCTION ⊚═102—ABATEMENT STATUTES.

Granting authority to enjoin crime, as the keeping of a bawdyhouse, as does Vernon's Sayles' Ann. Civ. St. 1914, art. 4689, is in the power of the Legislature, and invades no rights of property.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 156–171; Dec. Dig. ⊚═87; Injunction, Cent. Dig. § 176; Dec. Dig. ⊚═102.]

6. JURY ⊚═14—RIGHT TO JURY TRIAL—TEMPORARY INJUNCTION.

There is no right to a jury trial on an interlocutory hearing for a temporary injunction, but only on the final hearing.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 40–60, 66–83; Dec. Dig. ⊚═14.]

7. JURY ⊚═14—RIGHT TO JURY TRIAL—CIVIL OR CRIMINAL CASE.

A suit to enjoin the keeping of a bawdyhouse is not a criminal case, but a civil matter, as regards right to jury trial.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 40–60, 66–83; Dec. Dig. ⊚═14.]

8. WITNESSES ⊚═307—PRIVILEGE—INCRIMINATION.

A witness in a civil case, to be relieved from answering a question, on the ground that it will incriminate her, must swear that it will do so.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1061–1064; Dec. Dig. ⊚═307.]

9. WITNESSES ⊚═234 — EXAMINATION — ADVERSE PARTIES.

By express provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 3647 a party may, like any other person, be examined as a witness by the opposing party.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 815; Dec. Dig. ⊚═234.]

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. EVIDENCE ☞158—OWNERSHIP OF PREMISES—ABATEMENT OF NUISANCE.

Defendant's ownership of the premises need not, in a suit to enjoin the keeping of a bawdyhouse, be proved by a deed, but may be proved by direct testimony, including that of defendant, or by her admissions to others, or by any act tending to show it, as her rendering it for taxation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 472, 473, 474½–504, 506–526; Dec. Dig. ☞158.]

11. EVIDENCE ☞471 — CONCLUSIONS OR STATEMENT OF FACT—OWNERSHIP.

Statements as to who is the owner of property are not necessarily legal conclusions, but are statements of facts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. ☞471.]

12. APPEAL AND ERROR ☞742—ASSIGNMENTS OF ERROR—STATEMENT.

The statement, under an assignment of error attacking a description in the petition, making no effort to show what the description was, but merely referring to the record, is insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

13. APPEAL AND ERROR ☞742—ASSIGNMENTS OF ERROR—PROPOSITIONS—INDEFINITENESS.

An assignment of error, "Because the judgment * * * is contrary to the law and the evidence," with a proposition thereunder equally vague and indefinite, does not require consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Wesley Peacock against Maud Campbell. From a judgment granting a temporary injunction, defendant appeals. Affirmed.

Chambers, Watson & Reyes, of San Antonio, for appellant. Davies & Davies, of San Antonio, for appellee.

FLY, C. J. Appellee, describing himself as a citizen of the city of San Antonio, the county of Bexar, state of Texas, instituted this suit, alleging that he was at the head of Peacock Military School in San Antonio; that a large number of young men attended the school, who are committed to the care and attention of appellee; that appellant is owner of, or lessee of and in control of, lot No. 5, city block 339, being house No. 217, on the east side of South Santa Rosa avenue, of lot No. 10, city block 316, on north side of Matamoras street, of lots Nos. 11 and 12, city block 282, on north side of Matamoras street, south of Leona and South Frio streets, and two or three lots east of South Leona street, all in the city of San Antonio; that appellant, either by herself or through her agents, managers, lessees, or sublessees, had been using all of said property for keeping bawdyhouses, "where prostitutes are permitted to resort and reside for the purposes of plying their vocation." Appellant answered with a general demurrer and 25 special exceptions, by denials of parts of the petition, pleaded an ordinance in bar of the suit, and alleged, although there might not be a portion of the city segregated for houses of prostitution:

"That there has been, by acquiescence and consent and knowledge of city officials of the city of San Antonio, a designated district which has been set aside for said purposes of a disorderly house, and, having been so done, the same is just as binding and is just as much in full force and effect as if an ordinance were passed setting same aside, and property set out in petition of plaintiff's petition is in said district and delay of plaintiff in said matter is now estopped."

Appellant further alleged "that she is now, and has been, living a virtuous and upright life, and has been conducting herself in a ladylike manner and endeavoring to in all respects conform with the laws of this state," that the suit had "blackened her good name and reputation," and that she had been damaged in the sum of $10,000, for which she prayed judgment. The court, after hearing the evidence, granted a temporary writ of injunction, restraining appellant, her agents, lessees, sublessees, operators, and the inmates of her houses from running bawdyhouses on lot No. 10, block 316, on north side of Matamoras street, house No. 313, and lot 4, city block 282, on south side of Monterey street, house Nos. 508 and 510, all in the city of San Antonio.

[1] In 1907, the Legislature passed an act providing:

"The habitual, actual, threatened or contemplated use of any premises, place, building or part thereof, for the purpose of keeping, being interested in, aiding or abetting the keeping of a bawdy or disorderly house, shall be enjoined at the suit of either the state or any citizen thereof."

Vernon's Sayles' Stats. art. 4689. That statute authorizes any citizen of the state, whether any property or other rights of his are threatened or not, whether he is injured thereby or not, to enjoin the keeping of a bawdy or disorderly house. Appellee, therefore, having alleged that he was a citizen of Texas, could enjoin appellant from conducting houses of prostitution, whether such houses invaded any of his private rights or not, or whether they inflicted "irreparable injury" to him or not, and he was under no obligation to make allegations as to those matters. Each citizen of Texas is clothed with the authority to invoke the aid of a court to restrain and prevent the keeping of houses for the breeding of crime and dissemination of disease and immorality. The first assignment of error is overruled.

The case of State v. Patterson, 14 Tex. Civ. App. 469, 37 S. W. 478, was decided by this court many years before the statute cited was enacted, and, as should be apparent, has no application whatever to a case brought under the statute. In the case of Spence v. Fenchler, 151 S. W. 1094, it was not held that the petition should contain an allegation of injury to private rights, but

the court expressly recognizes the fact that the ruling in State v. Patterson cannot apply to cases under the statute, which "assumes that any citizen within the jurisdiction is injured." No court, under the statute, can hold, with any degree of propriety or reason, that an injunction cannot be granted except upon the petition of the state or some citizen whose property rights have been invaded. Courts have no authority to read any such provision into the statute which gives "any citizen," rich or poor, with or without property, the absolute right to enjoin the keeping of houses of prostitution, debauchery, and crime. The statute expressly provides that "such citizen shall not be required to show that he is personally injured by the acts complained of." Article 4690.

[2] The petition alleged that appellee was a citizen of Bexar county, state of Texas, and whether he afterwards described himself as the head of an educational institution, as colonel of militia, or a road overseer would be utterly immaterial. The fact that a man may be conducting a military school does not deprive him of his rights as a plain citizen of Texas. The second and third assignments of error are overruled.

The fourth assignment of error states that there was a misjoinder of causes of action, but no attempt is made in the brief to point out any such misjoinder. The petition does not disclose any misjoinder of causes of action. The assignment is overruled.

[3] There is no merit in the fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth assignments, and they are overruled. Under the statute, appellee was not required to plead that he had no adequate remedy at law; in fact the Supreme Court has strongly intimated that such allegation is not required in any petition for injunction.

[4] The fourteenth and fifteenth assignments of error attack the constitutionality of article 4689, on the ground that it seeks to authorize certain cities to segregate certain districts and license crime therein. If it be held that the statute in question recognizes the authority of certain cities to license prostitution, and that such authority is unconstitutional, that would not necessarily affect the remaining portions of the statute. The main purpose of the statute was to give the authority to the state, or any citizen thereof, to enjoin the keeping of bawdyhouses, and the exception sought to be interpolated into the statute could not affect the validity of the statute, however unconstitutional the exception might be. San Antonio School Dist. v. State, 173 S. W. 525. The fourteenth and fifteenth assignments are overruled.

It is unnecessary for this court to discuss the constitutionality of that part of the act which seemingly recognized the right of certain cities to designate reservations in which certain crimes may be perpetrated with impunity, because San Antonio has no such reservation. This court and others have, at different times, held that no such power can be given to the cities of Texas. McDonald v. Denton, 132 S. W. 823; Brown Cracker Co. v. City of Dallas, 104 Tex. 290, 137 S. W. 342, Ann. Cas. 1914B, 504; Clyman v. State (Cr. App.) 155 S. W. 231.

[5] The right to enjoin the commission of certain crimes, being expressly given by statute, has been so often upheld in Texas that it would be useless consumption of time to discuss the constitutional power of the Legislature to adopt such statutes. The authorities cited by appellant, to sustain a contrary proposition sustain the validity of such laws. Ex parte Roper, 61 Tex. Cr. R. 68, 134 S. W. 334; Ex parte Looper, 61 Tex. Cr. R. 129, 134 S. W. 345, Ann. Cas. 1913B, 32. In the case of Ex parte Allison, 48 Tex. Cr. R. 634, 90 S. W. 492, 3 L. R. A. (N. S.) 622, 13 Ann. Cas. 684, which is cited by appellant in support of the proposition that "the court cannot enjoin a crime or the commission of a crime," the Court of Criminal Appeals held:

"In addition to this, we go further, and hold that it is entirely competent for the Legislature to authorize the issuance of a writ of injunction, although it may involve restraining the commission of crime; that is, that the Legislature can enlarge the powers of courts of equity to grant injunctions. * * * If it be conceded that the effect of the act in question is to restrain the commission of crime, still, there being nothing in the Constitution preventing the Legislature from doing this, they had authority to so legislate."

The court was discussing the act of 1905, as to gambling, now article 4685. In the case of Ex parte Allison, 99 Tex. 464, 90 S. W. 872, 2 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 653, the Supreme Court sustained the constitutionality of laws granting power to enjoin crime, the court holding:

"We fail to see that there is any peculiarity about the writ of injunction, or any peculiar sanctity about criminal or quasi criminal acts, which debar the Legislature from providing that one may be enjoined by a suit in equity from establishing a public nuisance, such as a gaming house"

—and we add, or a house of prostitution. The laws as to obtaining injunctions against two of the most prevalent and debasing establishments, gaming houses and bawdyhouses, is not in conflict with criminal laws as to vagrants or prostitutes, but they are aids to them, and the Constitution cannot be invoked to protect the keepers of such houses from restraint through the courts at the instance of decent and law-abiding citizens. Old rules of equity courts cannot be invoked to destroy the machinery established by the Legislature to prevent criminals from outraging the decencies of civilized life and plying their degraded occupations. If it is despotism, as asserted by appellant, to restrain crime, the citizenship of Texas will welcome such salutary despotism. No man has the right to commit crimes against decency and good order, and the destruction of licentiousness, rath-

er than an attack on freedom, is involved in the restraint and suppression of such crimes against society. The courts of the country will not be led by an apotheosis of liberty to conjure imaginary constitutional rights to protect criminals in ruthless attacks upon the morals and decencies of civilized life. The right to violate laws and trample the rights of others into the dust are not involved in, nor are they a portion of, the rights of property. It is not disregarding a right of property to demand that it shall not be used for the debasement of the young and the pollution of society. Conformity to the laws of decency, purity, and uprightness has never deprived any man or woman of any God-given right, nor infringed upon true freedom in regard to person or property. The voice of the American people has been raised against "government by injunction," but not against such injunctions to prevent debauchery, lewdness, and crime, and no protest will ever be heard against such procedure except by those who desire to violate the laws of the commonwealth.

[6, 7] The trial had in this case was to determine whether a temporary writ of injunction should be granted, and appellant could not demand a trial by jury. To the trial judges is confided the discretion to grant or refuse temporary injunctions, and it was never contemplated that a party could demand a jury in an interlocutory proceeding, and then obtain another jury trial on the final hearing of the cause. When the case is called for final action appellant can have a jury trial on the facts, but interlocutory matters are addressed to the judge, and he alone must pass upon the sufficiency of the facts to justify a temporary restraining order. Appellant seems to labor under the impression that this is a criminal case, but it is a civil matter, as all cases must be that can be considered by this court. It follows that the seventeenth assignment of error must be overruled, the only proposition under it being:

"The Legislature has not the power to deprive persons charged with crime of the right of trial by jury."

The eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth assignments of error are overruled. There is no merit whatever in either of them.

[8-10] The twenty-fifth assignment of error complains that appellant was compelled to testify as to whether she collected rents from certain property and to give the numbers of the houses thereon. Laboring under the false impression that she was being tried for the crime of keeping a bawdyhouse, appellant objected to her evidence because it would incriminate her, as well as that ownership of houses cannot be proved by parol testimony. Appellant did not swear that her evidence would incriminate her, and the evidence was properly admitted. Woodmen v. Bailey, 163 S. W. 683. There was no impropriety in asking appellant the questions objected to. It is statutory that either party to a suit may be examined by the opposing party as a witness just as any other witness would be examined. Article 3647. Ownership was established by other testimony, and if there had been error in admitting the testimony, it could not have damaged appellant. It was shown by the tax assessor that appellant had sworn that the property was hers, and had rendered it for taxation. It is not true, however, that in cases of this character ownership can only be proved by a deed, for it has been held, even in criminal cases, that ownership of houses can be proved by the tax assessor's rolls. Frazier v. State, 47 Tex. Cr. R. 24, 81 S. W. 532; Moore v. State, 53 Tex. Cr. R. 559, 110 S. W. 912; Sweeney v. State, 59 Tex. Cr. R. 370, 128 S. W. 393; Clyman v. State (Cr. App.) 155 S. W. 231; Davidson v. State (Cr. App.) 173 S. W. 1037. Her evidence, however, as to ownership of the property was admissible, as were her admissions to others. Railway v. Hall, 35 Tex. Civ. App. 545, 81 S. W. 82. Ownership and possession each can be proved by direct testimony of a witness. Any act tending to show ownership and control may be placed in evidence, such as applying for a license to conduct a business on the property or rendering it for taxation. Abbott's Trial Ev. p. 735. The property could be identified by any witness who would testify that the houses having certain numbers were on the lots described in the petition.

[11] This not being an action of trespass to try title, the rules of evidence prescribed for that class of cases have no applicability to a case like this. Any testimony tending to show ownership or control would be sufficient. Statements as to who is the owner of property are not necessarily legal conclusions, but are statements of facts. Knapp v. Smith, 27 N. Y. 277; Nicolay v. Unger, 80 N. Y. 54.

[12] The twenty-ninth assignment of error which seeks to attack the description of the property given in the petition is not followed by a sufficient statement. No effort is made in the statement to show what description was given in the petition. References to the record are not sufficient.

[13] The thirtieth assignment of error is:

"Because the judgment granting said injunction is contrary to the law and the evidence"

—and of course is too general, vague, and indefinite to require consideration. The proposition under the assignment is fully as vague and indefinite as the assignment.

The solicitude and fear expressed by appellant that "the courts, step by step and piecemeal by piecemeal, are destroying the American Constitution" are ungrounded. The palladium of our liberties will never be impaired or destroyed by an honest effort upon the part of judicial tribunals to repress crime. The state courts are fully as jealous of the rights of the individual as any litigant

can be, and will diligently guard them from all attacks. It is the history of every law that is passed to protect the health, to conserve the morals, and uphold the peace and order of communities that it is attacked by those affected on the ground of being an invasion of private rights and an attack upon the Constitution. The courts invariably sustain the exercise of police powers exerted for the public benefit, and in spite of charges that such decisions are conspiracies to destroy the popular government, the Ship of State of the great Republic has weathered the storms of more than a century, and has grown from its primal puny condition until it ranks with the foremost nations of the world, and in no portion of the world are private rights more strictly guarded and private wrongs more thoroughly redressed than in this government against whose judiciary the charge is made that they, "step by step and piecemeal by piecemeal, are destroying the American Constitution." The doctrine has always been upheld by the courts that no private right should be interfered with, unless its exercise is detrimental to the peace, health, or morals of the great majority. On that rock is built popular institutions and free government.

The judgment is affirmed.