H. H. REAVES AND R. S. REAVES v. THE TERRITORY OF OKLA-
HOMA.

(Filed September 10, 1903.)

1. NUISANCE—Bond. An action may be maintained in the name of the territory, at the instance of the county attorney or attorney general, to enjoin and suppress a public nuisance, and no bond is required.

2. SAME—Injunction. The facts in this case justified the court in granting an injunction to suppress and abate a common nuisance, as one of the exceptional cases warranting the exercise of such jurisdiction.

3. SAME—What Constitutes. A license to sell intoxicating liquors, and to operate a theatre at a place designated, will not justify the conducting of such business in a manner offensive to decency and public morals, nor will such license be any protection against

unlawfully permitting and maintaining a public nuisance.

4. **SAME—Trial by Jury.** A trial by jury is not required in suits brought for an injunction to suppress and abate a public nuisance.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Bayard T. Hainer, Trial Judge.*

*Buckner & Sons,* for plaintiffs in error.

*J. C. Robberts, Attorney General,* and *C. H. Woods, Assistant,* for defendant in error.

### STATEMENT OF FACTS.

An action in the name of the Territory of Oklahoma against H. H. Reaves and R. S. Reaves at the instance of the county attorney of Logan county, to enjoin the maintaining of a public nuisance, to-wit: A disorderly and disreputable theatre in the city of Guthrie. Trial was had; judgment for defendant in error; injunction allowed; motion for new trial overruled; exceptions; plaintiff in error brings case here by petition in error for review.

Opinion of the court by

BEAUCHAMP, J.: This was an action commenced in the district court of Logan county in the name of the territory as plaintiff, at the instance of the county attorney of Logan county, to enjoin the plaintiffs in error from maintaining a public nuisance in running a disorderly and disreputable theatre in the city of Guthrie. Upon the filing of the petition, and upon the application of the county attorney, a temporary restraining order was issued. Issues were formed by the pleadings, and trial was had, and an injunction was allowed by the court restraining the plaintiffs

in error and their agents, employes and assignees from permitting or giving lewd, lascivious or indecent shows and entertainments in a building located on the northwest corner of Second street and Harrisoon avenue in the city of Guthrie, and from permitting or allowing to be sung lewd, lascivious or immoral songs in said theatre, and from permitting any spirituous, vinous or malt· liquors to be sold or given away or in any manner disposed of in said building, or in the part thereof where theatre performances are being given, and during the time that such performances are in progress, and also from allowing any open door between the room occupied and used as a theatre to remain open or capable of being used for a passageway from the theatre to the bar, and from allowing or permitting boisterous and noisy crowds to assemble in said theatre during the performances; and further ordered that the said defendants be permitted to use said room for performances of a decent character. Motions to dissolve the temporary injunction, and to dismiss the action for want of jurisdiction, and a demurrer to the petition were filed before the trial, heard by the court, overruled and exceptions saved, but it will be unnecessary to notice the rulings upon these pleas as the consideration of the case upon its merits necessarily disposes of the questions raised by the pleadings and rulings thereon.

The plaintiffs in error have filed a lengthy brief and argument, but it will not be convenient for us to follow in this opinion the points in the order given in their brief.

It is contended that the action being entitled "Territory of Oklahoma" as plaintiff, it cannot be maintained. It should have been entitled "Territory of Oklahoma, on the

relation of the County Attorney or Attorney General." The
petition is styled "The Territory  of  Oklahoma v. H. H.
Reaves and R. S. Reaves," and the plaintiff for its cause
of the action alleges that Edgar W. Jones is the duly elected,
qualified and acting county attorney for Logan county, Terri-
tory of Oklahoma, and the petition is verified by him upon
information and belief as being true, and signed as county
attorney of Logan county, O. T.  Conceding that the con-
tention of the plaintiffs in error is correct, that the action
can only be brought on the relation of the county attorney
or attorney general, an examination of the petition would
satisfy this requirement, as it is clearly shown that the ac-
tion was brought at the instance of the county attorney of
Logan county, or. the party authorized as contended by plain-
tiffs in error to institute proceedings, and the mere fact that
in the styling of the action it is entitled in the name of the
territory alone, without reciting that it is on the relation
of the county attorney, the public official, when it is fully
shown in the petition that it is upon the relation of such
officer, would not justify the contention of plaintiffs in error;
and if an irregularity, would not be such an irregularity as
would affect the substantial rights of the parties.   Section
4440, Wilson's Statutes, 1903, provides:

"An injunction may be granted in the name of the terri-
tory to enjoin and suppress the keeping and maintaining of
a common nuisance.   The petition therefor shall be verified
by the county attorney of the proper county, or by the at-
torney general, upon information and belief, and no bond
shall be required."

As will be observed in this case, the petition was veri-
fied by the county attorney of Logan county upon informa-

tion and belief, and that is all that is required under the foregoing statute. The plaintiffs also contend that the action should not have been permitted to be brought without bond. The statute is explicit, and provides that no bond shall be required. Therefore there is no justification for such contention.

Have the courts of this territory jurisdiction in equity to suppress and abate a public nuisance by injunction? As to the right and jurisdiction of the courts to suppress and abate the keeping and maintaining of a common nuisance by injunction, there can be no question under the section of the statute above quoted, for the authority is expressly given there by the legislature. Counsel for the plaintiff in error contends that before the court can adjudge the defendants guilty of the commission of a public nuisance, it must find some statute which they have violated, declaring the commission of the acts charged to them to be a crime.

Section 2340 of Wilson's Statutes provides:

"A public nuisance is a crime against the order and economy of the territory, and consists in unlawfully doing any act or omitting to perform any duty required by the public good, which act or commission either, first, annoys or injures the comfort, repose, health or safety of any considerable number of persons; or, second, offends public decency."

Section 2650, crimes act, provides:

"Every person who wilfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency, and is injurious to public morals, although no punishment is expressly prescribed therefor by this chapter, is guilty of a misdemeanor."

Counsel for plaintiffs in error contends that this statute

does not create a crime, for the reason that it does not define, prohibit or declare any specific act which shall be considered as an offense against public decency, or injurious to public morals. The plaintiffs in error were operating a theatre in the city of Guthrie, to which they invited the public generally, and to which the public were accustomed to resort, and in connection therewith were operating a saloon. The acts complained of, and which are charged to constitute the maintaining of a public nuisance, are:

"Plaintiffs in error allowed and authorized lewd and lascivious songs to be sung and that lewd persons of both sexes were permitted to congregate in the theatre and saloon and that lewd and lascivious exhibitions were there given and that lewd persons were permitted and were in the habit of congregating there for immoral purposes, and that the persons so assembled were drunken, immoral, noisy, boisterous, and that the persons in the neighborhood were disturbed by the noise and boisterousness; and that lewd and filthy songs were sung far into the night to the disturbance of the neighbors, and that such conduct was permitted and continued during six nights of each week and until midnight and later."

Do such acts constitute public offenses under the laws of this territory? The evidence in this case discloses that persons in the theatre during the performance, and upon the streets in front of the entrances of such theatre, were permitted to use profane, obscene and lascivious language, both in the presence of males and females, and persons passing on the public street, and so loud and boisterous as to annoy persons engaged in the pursuit of their business and vocations in that neighborhood.

Section 1959, Wilson's Statutes, provides:

26—Vol 13

"If any person shall utter or speak any obscene or lascivious language or word in any public place, or in the presence of females, or in the presence of children under ten years of age, he shall be deemed guilty of a misdemeanor and upon conviction thereof before any justice of the peace of this territory, he shall be liable to a fine of not more than one hundred dollars, or imprisonment of not more than thirty days, or both, at the discretion of the justice."

The evidence clearly discloses violations of every provision of this section of the statutes.

Section 2302 provides:

"Every person who keeps any disorderly house or any house of public resort by which the peace, comfort or decency of the immediate neighborhood is habitually disturbed, is guilty of a misdemeanor."

Section 2614 provides:

"Every person found guilty of selling any intoxicating liquors by agent or otherwise * * * to persons intoxicated, or who are in the habit of getting intoxicated, is punishable by a fine not exceeding one hundred and fifty dollars, and not less than twenty dollars for each offence."

The record discloses that all of the acts defined to be crimes in the foregoing sections were being violated by plaintiffs in error continuously six nights out of each week. If it were necessary that all the acts complained of as contended by plaintiffs in error should be defined to constitute a crime, and specially declared to be such by the statutes of this territory, then under the sections above quoted his contention is fully answered and satisfied.

While the cases are few in which the courts have been called upon to exercise their equitable jurisdiction in suppressing and abating a public nuisance of the character described in this case, there is no doubt but that the courts have

such authority and jurisdiction. In the case of *Mugler &
Zieboldt v. Kansas,* 123 U. S. 673, it is said:

"In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction." (2 Story's Eq., 921, 922.)

And the reason there assigned is the ability of the courts of equity to give a more speedy, effectual and permanent remedy, than can be had at law, and it is said:

"They can not only prevent nuisances that are threatened and before irreparable mischief ensues, but arrest or abate those in progress, and by perpetual injunction protect the public against them in the future; whereas, courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury."

The above cites numerous cases. And jurisdiction over public nuisances is the same as over private nuisances. In the case of *In re Debs,* 168 U. S. 592, it is said:

"The difference between a public nuisance and a private nuisance is that one affects the people at large and the other simply the individual. The quality of the wrong is the same and the jurisdiction of the courts over them arises upon the same principles and goes to the same extent. Of course, circumstances may exist in one case which do not in another to induce the court to interfere or refuse to interfere by injunction, but the jurisdiction, the power to interfere, exists in all cases of nuisance."

And again, page 592:

"It may indeed be affirmed that in no well considered case has the power of a court of equity to interfere by in-

junction in cases of a public nuisance been denied; the only denial of it being that of a necessity for the exercise of that jurisdiction under the circumstances of the particular case."

But aside from the principles enunciated in the authorities cited, and which are undoubtedly the now settled law of this country, the statutes of this territory, aside from the criminal statutes, have defined a public nuisance.

Wilson's Statutes, section 3717, reads: •

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: First, annoys, injures or endangers the comfort, repose, health or safety of others; or, second, offends decency."

Section 3718, Wilson's Statutes, provides:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

Section 3724: "The remedies against a public nuisance are: First, an indictment; second, a civil action; or, third, abatement."

Section 3725: "The remedy by indictment is regulated by the law on crimes and punishment and criminal procedure."

Section 3727: "A public nuisance may be abated by any public body or officer authorized thereto by law." •

It will be observed from the statutes above quoted that a public nuisance is defined by the statutes, and that the remedies to abate such public nuisances are also provided, among which is provided a civil action; and that section 4440 cited provides a remedy in a civil action by injunction granted in the name of the territory to enjoin and suppress the keeping and maintaining of such common and public nuisance. Aside from the remedies afforded by the common

law in the absence of a statute, the statutes of this terri-
tory have clearly defined a common nuisance and provided
the remedy against the permitting and maintaining of such
a nuisance, and have provided the identical remedy invoked
in this case. It would seem unnecessary to look for further
authority to support such an action in cases under facts and
circumstances such as exist in the case at bar. The record in
this case discloses that the plaintiffs in error, in utter dis-
regard of the rights of others, upon one of the principal.
streets in the capital city of this territory, not only per-
mitted but encouraged and  induced  the congregation of
characters of the very worst repute, who were permitted
and allowed to indulge in language and practices which were
offensive in the extreme to the decent and law-abiding citi-
zens and inhabitants of the city of Guthrie. That such
actions and conduct as were permitted by plaintiffs in error
was a public nuisance cannot be questioned, and that under
the circumstances of this case were such as would justify the
public officers in applying to a court of equity to suppress
and abate by injunction, as one of the exceptional cases war-
ranting the exercise of such jurisdiction. In the case of
*Phalen v. Virginia,* 49 U. S. 167, it is said: "The suppres-
sion of nuisances injurious to public health and morals is
among the most important duties of government."

Wood's Law of Nuisance, page 43, section 37, reads:

"So, too, a disorderly house is a common nuisance, and
while bawdy houses legitimately come under this head, yet
it embraces a large class of other houses, kept for entirely
different purposes, and to constitute which prostitution need
not be an element."

"Section 38. A disorderly house is any place of public
resort in which unlawful practices are habitually carried on,

or which becomes a rendezvous or place of resort for thieves, drunkards, prostitutes, or other idle, vicious and disorderly persons, who gather there to gratify their depraved appetites, or for any purpose; for such persons are regarded as dangerous to the peace and welfare of the community, and their presence at any place in considerable numbers is always a just cause of alarm and apprehension. * * * * * * And a place where liquor is sold under a license in excessive quantities, whereby persons become intoxicated, and where frequent brawls result therefrom, is a disorderly house, and indictable as a nuisance, for no person has a right to carry on upon his own premises or elsewhere, for his own gain or amusement, any public business clearly calculated to injure and destroy public morals or to disturb the public peace. And while a license to sell liquors will protect a person from prosecution for such sales, it will not protect him from prosecution for an abuse of the authority given him, whereby he creates a nuisance."

"Section 39. Noise and violence are not necessary elements to constitute a disorderly house. It is sufficient to show a place illy governed and regulated in the sense before stated. It is enough to show that the practices indulged in are unlawful, and destructive of public morals, or of the public peace, or dangerous to the lives or property of a community."

"Section 43. In *Tanner v. Trustees*, 5 Hill. 121, the court held that a bowling alley or any place of amusement kept for hire that serves no useful end is a public nuisance."

Nor will the contention of plaintiffs in error that the territory and county having granted a license to them to sell intoxicating liquors and operate a theatre at the place designated, justifies them in conducting such business in a manner offensive to decency and morals, nor will such a license protect them in permitting and maintaining the nuisance

complained of in this case. The license only authorized them to sell intoxicating liquors at the place designated, in a lawful manner, and the license permitting them to operate a theatre at such a place only permitted them to conduct such theatre in a lawful manner, and did not permit or authorize them to invite and permit characters such as are described, to congregate and indulge in loud and boisterous language, and the conduct as disclosed by the record in this case. It is not the sale of intoxicating liquors in a lawful manner which is authorized by their license, nor the conducting of a theatre in a lawful and peaceful manner, that is complained of, but it is the manner of running the business, the permitting of unlawful practices and violations of law, and the obligation to the public, that are complained of; therefore a license or licenses to operate and engage in a business so long as conducted in a lawful manner would not protect them in maintaining a public nuisance, which is in violation of the laws of the territory. (*Haggart v. Stehlin,* 22 L. R. A., 577.)

As to the objection that the plaintiffs in error were not permitted a jury trial, it is sufficient to say that a trial by jury is not required in suits in equity brought for an injunction to suppress and abate a public nuisance. (123 *U. S.* 673, *supra.*) It is stated in the opinion in that case:

"As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such mode of trial is not required in suits of equity brought to abate a public nuisance."

There is no claim of damages to property rights in this case, but it is only by reason of the injury to good morals and public decency, to refuse to enforce which rights would unquestionably be against public policy. Finding no error in

the proceedings, and trial, the judgment of the district court of Logan county is affirmed, with costs to plaintiffs in error.

Hainer, J., who presided in the court below, not sitting; Gillette, J., absent; all the other Justices concurring.