STATE *ex rel.* WEST, *Atty. Gen.*, v. STATE CAPITAL CO.

No. 185.   Opinion Filed July 13, 1909.

(103 Pac. 1021.)

1.    STATUTES—Intoxicating Liquors—Construction—Intent—Advertisement For Sale—Liquor Outside State. If a penal statute or provision of law is equally susceptible of two interpretations, that should be adopted which gives it the effect evidently intended by the lawmakers.

(a)    The provision of the prohibition article of the Constitution of Oklahoma (Bunn's Ed. sec. 499; Snyder's Ed. p. 394), forbidding the advertising for sale or soliciting the purchase of intoxicating liquors of any kind, including beer, ale, and wine, includes advertisements for the sale of intoxicating liquors, including beer, ale, and wine, sold or kept for sale without the state.

(b)    Section 1, art. 3, c. 69, of the enforcing act (Sess. Laws 1907-08, p. 603), forbidding the advertising for sale or soliciting the purchase of spirituous, vinous, fermented, or malt liquors, or any imitation thereof or substitute therefor, includes advertisements for the sale of spirituous, vinous, fermented or malt

liquors or any imitation thereof or substitute therefor, sold or kept for sale without the state.

2. **COMMERCE—Interstate—Intoxicating Liquor—Advertisement For Sale.** By the act of Congress known as the "Wilson Act" (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), intoxicating liquors are, to a certain extent, withdrawn from the protection of the commerce clause of the United States Constitution, and made subject to the police powers of the state. Since said act a state may lawfully prohibit the advertising within the state of intoxicating liquors sold or kept for sale without the state.

3. **INTOXICATING LIQUORS—Advertisement for Sale—Injunction —Criminal Responsibility.** The publishing of such advertisements by a newspaper within the state may not be restrained by means of injunction.

(a) A criminal prosecution will lie for such infraction.

(Syllabus by the Court.)

*Error from District Court, Logan County; J. C. Strang, Special Judge.*

Action by the State, on the relation of Chas. West, Attorney General, against the State Capital Company. Judgment for defendant, and relator brings error. Affirmed.

On the 13th day of April, 1908, the plaintiff in error, on the relation of Chas. West, Attorney General, commenced its action in the district court of Logan county, state of Oklahoma, against the defendant in error, the State Capital Company, alleging that it was a corporation organized under the laws of the territory of Oklahoma, and a domestic corporation in the state of Oklahoma, doing a printing, publishing, and book-selling business in the city of Guthrie, county of Logan, state of Oklahoma; that in defiance of law and of the rights of the inhabitants of the state, on the 12th day of April, 1908, said defendant advertised "as being for sale and advertised the purchase of intoxicating liquors, including beer, ale, and wine, by advertising and printing in said paper, hereinafter named, an advertisement of 'Rieger's Monogram Whiskey,'" which said advertisement is attached thereto as an exhibit and made a part thereof, and did "advertise the sale and purchase of intoxicating liquors, including ale, beer, and wine,

State *ex rel.* v. State Capital Co.

on said date, by advertising the sale of 'Shawhan Whiskey' as set out in said advertisement," thereto attached as an exhibit and made a part thereof, and did "advertise the sale of 'Pabst Milwaukee Beer,'" as set out as an exhibit and made a part thereof, and "the sale of 'Moonshine Whiskey,'" as set out as an exhibit and made a part thereof, and "the sale of 'Stanley Pure Rye,'" as set out as an exhibit and made a part thereof, and "the sale of 'Old Simpson Whiskey,'" as set out as an exhibit and made a part thereof. The following is a true and correct copy of the advertisement of "Rieger's Monogram Whiskey," attached as an exhibit to the petition of plaintiff:

PRICE LIST SENT FREE UPON APPLICATION

**RIEGER'S PURE OLD Monogram Whiskey**

Purity and age guarantee Good Whiskey. Rieger's Monogram is absolutely pure and wholesome. Guaranteed under the Pure Food Laws. Its exquisite, smooth, mellow flavor has made it a lasting favorite with over 100,000 satisfied customers. We are U. S. Registered Distillers (Distillery No. 360, 5th Dist. of Ky.) Why pay exhorbitant prices, when you can buy Rieger's Monogram whiskey at the regular wholesale dealer's price and save money by ordering your goods shipped direct.

**WE PREPAY ALL EXPRESS CHARGES**

8 **Qts. RIEGER'S MONOGRAM PRIVATE STOCK** $5.00

4 **Qts. RIEGER'S MONOGRAM EXTRA FINE** $3.00

**FREE WITH EACH ORDER**

Two sample bottles of Rieger's Fine Monogram Whiskey, Gold-tipped Whiskey Glass and Patent Corkscrew.

**No Marks on Packages to Indicate Contents**

Send us an order and when you get the Whiskey, test it for flavor, smoothness and all the essentials of GOOD Whiskey. Compare it with other Whiskies (no matter what the price); test it for medicinal purposes; let your friends try it; use half of it if necessary to satisfy yourself on these points—then if you are not thoroughly convinced that "Rieger's Monogram" is as good as any Whiskey you ever drank return the balance to us and we will pay return charges and at once send you every cent of your money.

**J. RIEGER & CO.** 1566 Genesee Street KANSAS CITY, MO.

The other advertisements, in substance and form, are practically the same. It is further alleged that the defendant, the State Capital Company, is the owner, proprietor, manager,

printer, and publisher of a daily newspaper, called the "Oklahoma State Capital," of wide circulation in the county of Logan and other places in said state; that said advertisements were made in the said the Oklahoma State Capital by the defendant on said date as aforesaid, and that unless enjoined from so doing said defendant threatens to continue to commit said nuisance of such publication; that the publication of said advertisements and advertisements of a similar character were made by it on the 5th day of April, 1908, on the 29th day of March, 1908, and on other dates; that said offense is a public nuisance, in that it is a solicitation in the state of the sale of intoxicating liquors, including beer, ale and wine, and prohibited by the laws of the state; that said acts annoy, injure, and endanger the comfort, liberty, health, and safety of the inhabitants of the state, offend public decency, and render the person and property of inhabitants of the state insecure, and that same is a public and common nuisance; that the same is published openly and commonly, and affects a great many of the citizens of the state, and is a public solicitation of the sale and purchase of intoxicating liquors, including beer, ale, and wine, and same is so solicited in this state; that said acts constitute an abandonment of the corporate rights of said the State Capital Company; that plaintiff has no adequate remedy according to the course of common law, and unless the defendant is enjoined it will continue in said violation of law and the committing of said nuisance and said acts, which amount to a forfeiture of its corporate rights.

A temporary injunction was denied, and an appeal prosecuted to this court.

*Chas. West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for plaintiff in error, citing: *Delmater v. So. Dakota,* 205 U. S. 93; *In re Debbs,* 158 U. S. 564; *United States v. Milwaukee Refrigerator Transit Co. et al.,* 145 Fed. 1007; *Swift v. United States* 196 U. S. 375; *Missouri Pacific Railway Co. v. United States,* 189 U. S. 274; *In re Allison* (Tex.) 90 S. W. 492; *State v. Sanders* (N. H.) 18 L. R. A. 646.

*Dale & Bierer and B. F. Hegler, Jr.,* for defendant in error,

citing: *Adams Express Co. v. Kentucky,* 206 U. S. 129; *Vance v. Vandercook Co.,* 170 U. S. 438; *Rhodes v. Iowa,* 170 U. S. 412; *Allgeyer v. Louisiana,* 165 U. S. 578; *M. Golden & Co. v. Guthrie,* 3 Okla. 128; *Winans v. Beadler,* 6 Okla. 603; *People ex rel. v. Dist. Court of Lake County* (Colo.) 58 Pac. 604; *Hamilton - Brown Shoe Co. v. Saxey,* 131 Mo. 212.

WILLIAMS, J. (after stating the facts as above). There are only three questions raised in this record: (1) Do the provisions of the prohibition article of the Constitution (Bunn's Ed. § 499; Snyder's Ed. p. 394), and of section 1, art. 3, of the enforcing act (Sess. Laws 1907-08, p. 603), against the advertising for sale or soliciting the purchase of intoxicating liquors, include advertisements of such liquors sold or kept for sale without the state? (2) Are said provisions of the Constitution and the enforcing act valid? (3) Is injunction a proper remedy to restrain such advertisement or solicitation?

1. It is insisted by the defendant in error that the words "such liquors," as applied to advertisements or publications, refer to the unlawful manufacture, sale, barter, giving away, or otherwise furnishing of liquors referred to in said prohibition provision of the Constitution and the enforcing act, and that it was neither the intention of the makers of the Constitution nor of the Legislature to prohibit the advertisement for sale or soliciting the purchase of liquor sold or kept for sale outside of the boundaries of the state of Oklahoma. In the case of *State v. J. P. Bass Publishing Co.,* 71 Atl. 894, decided by the Supreme Judicial Court of Maine on July 15, 1908, section 45, c. 29, of the Revised Statutes, popularly known as the "Prohibitory Law," was under consideration, which provides as follows:

"Whoever advertises or gives notice of the sale or keeping for sale of intoxicating liquors, or knowingly publishes any newspaper in which such notices are given, shall be fined for such offense the sum of twenty dollars and costs, to be recovered by complaint."

In that case the defendant claimed that its act of publishing

the advertisement was lawful upon two grounds: (1) That the statute is susceptible of the construction that it only prohibits notices or advertisements of liquor for sale or kept for sale without the state, and, being a penal statute, should therefore receive this strict construction; (2) that if it should be construed as prohibiting notices or advertisements of liquors for sale or kept for sale in another state, where such sale and keeping for sale are lawful, as in that case, then, so construed, the statute is so far nullified by that clause of the Constitution of the United States known as the "commerce clause," which confers upon Congress the power "to regulate commerce with foreign nations and among the several states and with the Indian tribes." The court said:

"The statute in this case is but a part of the legislation of this state upon the subject-matter of the sale and keeping for sale of intoxicating liquors, and is to be construed, so far as its language will fairly and reasonably allow, in harmony with what appears from that legislation to be the legislative policy and purpose. The selling and keeping for sale of intoxicating liquors are in themselves harmless acts. If the people purchasing such liquors used them only for 'medical, mechanical, and manufacturing purposes,' no harm would result to the people of the state; and the sale and keeping for sale of intoxicating liquors for such purposes are provided for in section 14 of chapter 29. It is common knowledge that it is the use of intoxicating liquors as a beverage that is deemed harmful, and is the mischief sought to be prevented by the legislation. The prohibition of the sale and keeping for sale of intoxicating liquors is only a means. The end sought for is the prevention, or at least the diminution, of the drinking of intoxicating liquors by the people of the state. The legislation upon the subject, including the statute in question, should be construed to further that end, so far as the language, without bending either way, fairly allows. The language of the statute (section 45) is comprehensive. There are in it no words limiting the prohibition to notices or advertisements of liquor kept for sale or to be sold within this state. Read in connection with the other legislation, its evident purpose is to further the ulterior purpose of all that legislation, viz., to diminish the use of intoxicating liquors as a beverage. To effect that purpose, it

must be construed as prohibiting notices and advertisements of liquors for sale or kept for sale without the state as well as within, and we think the language fully permits, if it does not require, such a construction, and we accordingly accept it as the true construction."

The provision of the Constitution forbidding the advertising or soliciting of sales of "such liquors" is as follows:

" * * * Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, including beer, ale and wine, contrary to the provisions of this section, or who shall, within this state, advertise for sale or solicit the purchase of such liquors. * * * "

The contention of defendant in error that said provision applies to "such liquors" as are sold, bartered, given away, or otherwise furnished contrary to the provisions of said sections is not based upon reason. What law-breaker would advertise his business in the newspapers? On the contrary, he would conceal it; and statutes are to be construed in the light of reasonable action and the common or ordinary experience of men.

The same applies to section 1, art. 3, of the enforcing act, which provides:

"It shall be unlawful for any person, individual or corporate, to manufacture, sell, barter, give away, or otherwise furnish, except as in this act provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor; or to manufacture, sell, barter, give away or otherwise furnish any liquors or compounds * * * except preparations compounded by any licensed pharmacist. * * * or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card, price list, advertisement, or otherwise. * * * "

This section goes beyond the express provisions of the Constitution, and applies, not only to the soliciting of the purchase of any such liquors by sign, circular, letter, card, price list, advertisements, or otherwise, but also to the distribution, publishing, or displaying of any advertisement, sign, or notice, where any such liquor may be manufactured, bartered, sold, given away, or

otherwise furnished. The manufacture of liquor is expressly pro-
hibited, and it is not to be presumed that the makers of the Con-
stitution, or members of the Legislature, would assume that such
provisions of law would be so violated that liquors would be
manufactured in the teeth of such prohibitory provisions, and that
the distillery, or place of manufacture, as well as such illegally
manufactured liquors, would be advertised by sign, circular, let-
ter, card, price ,list, advertisement, or otherwise in this state.
Constitutions and statutes are to be construed in the light of rea-
son and experience, and it is clear that "such liquors" as referred
to in the constitutional provision are "liquors of any kind, includ-
ing beer, ale and wine," and in sec. 1, art. 3, of the enforcing
act "spirituous, vinous, fermented or malt liquors, or any imita-
tion thereof or substitute therefor, *  *  *  or  *  *  * any
liquors or compounds, *  *  * except preparations compounded
by a licensed pharmacist."

2. Having determined the meaning of these provisions, the
question arises as to whether or not the same are repugnant in
any manner to the commerce clause of the Constitution of the
United States. This identical question was passed on in the case
of *State v. J. P. Bass. Publishing Co., supra,* wherein Mr. Chief
Justice Emery said:

"*  *  * It may be conceded that but for the act of Con-
gress known as the 'Wilson Act' (Act Aug. 8, 1890, c. 728, 26
Stat. 313 [U. S. Comp. St. 1901, p. 3177]), the state statute
above construed would be in conflict with the commerce clause
of the United States Constitution. The Wilson act, however,
goes far to remove intoxicating liquors from the protection of that
clause, and to give full effect to state legislation concerning them.
Decisions of United States courts upon the subject, made prior
to the passage of that act, are now inapplicable, and need not
be considered. Since the Wilson act the state may prevent the
sale within its limits of intoxicating liquors in the original pack-
age, and to that end may seize them in such packages
the moment they are delivered. Also, to further the welfare
of its people, the state may now prohibit the solicitation within
the state of orders for the purchase of liquors without the state.

This seems to be settled by the recent decision of the United States Supreme Court in *Delamater v. South Dakota,* 205 U. S. 93, 27 Sup Ct. 447, 51 L. Ed. 724. Delamater, a salesman for a firm of liquor dealers in Minnesota, carried on the business in South Dakota of soliciting orders from residents of that state for the purchase of intoxicating liquors from his firm in Minnesota. The law of South Dakota imposed an annual license charge upon 'the business of selling or offering for sale' intoxicating liquors within the state. The statute was admittedly a police regulation, and not a revenue measure. Delamater did not offer to make sale of intoxicating liquors within the state. He merely solicited orders for liquors to be sold in Minnesota, and shipped from there to the purchaser at his risk. Being prosecuted for not paying the license fee, he set up in defense the commerce clause of the United States Constitution. The United States Supreme Court, following the decision of the Supreme Court of South Dakota, held the state statute constitutional on the ground that the Wilson act authorizes a state to restrain persons from soliciting within its territory orders for the purchase of intoxicating liquors in another state to be shipped to the purchaser in his state.

"Under that decision neither the Boston firm of Chas. Gallagher & Co. nor any agent for them can within the territory of this state solicit orders for the purchase of intoxicating liquors in Massachusetts to be shipped to the purchaser in Maine, if our statutes so forbid. Since advertising is really soliciting, it would seem to follow that they cannot lawfully advertise in this state such liquors for sale in Massachusetts, and that the publishers of newspapers within this state cannot lawfully publish such advertisements in the face of the state statute expressly forbidding it. It may be noted that in the advertisement in this case the advertisers say to the reader: 'Send us $3.00 and we will ship you in plain sealed case prepaid, with no marks to show contents, four full quarts of Gilbert Pure Rye Whiskey.' The advertisement was in a Maine newspaper, and plainly was for orders for intoxicating liquors to be shipped to the purchaser in Maine. The case would therefore seem to be well within the rule of the decision in the case cited.

"For answer to the able argument and citations of the defendants' counsel, we refer them and the profession to the opinion of the court in the *Delamater Case,* 205 U. S. 93, 27 Sup.

Ct. 447, 51 L. Ed. 724. The Supreme Court in that case did not hold, nor do we hold in this case, that an inhabitant of a state where the sale of intoxicating liquor is prohibited may not purchase intoxicating liquors in another state and bring them into his own state for any lawful use; but we understand that court to hold, and hence we hold, that a state may prohibit an inhabitant of an other state making in this state a contract for, or soliciting orders for, the sale of intoxicating liquors in any state. The question is fully discussed in the opinion with illustrations drawn from some state insurance statutes. Whilst a state cannot prevent one of its citizens from making a contract of insurance in another state, it may forbid, within its own borders, insurance contracts by foreign companies or their agents. *Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; *Commonwealth v. Nutting,.* 175 Mass. 154, 55 N. E. 895, 78 Am. St. Rep. 483; *Nutting v. Massachusetts,* 183 U. S. 553, 22 Sup. Ct. 238, 46 L. Ed. 324. The court there goes on to say: 'The ruling thus made is particularly pertinent to the subject of intoxicating liquors and the power of the states in respect thereto. As we have seen, the right of the states to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulations of commerce embodied in the Wilson act is absolutely applicable to liquor shipped from one state into another, after delivery, and before the sale in the original package. It follows that the authority of the states, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the states to forbid agents of non-resident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors which otherwise the citizens of the state would not have thought of making must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being, which it may be assumed lie at the foundation or regulations concerning the traffic in liquor.' * * *

"The defendants further urge that newspapers and magazines published in other states and containing advertisements of intoxicating liquors for sale come into this state by mail and otherwise in large quantities, and yet cannot be interfered with by the

state authorities. That may be; but it does not follow that the state may not prevent such advertisements being printed in newspapers published in this state. If the state cannot wholly prevent the mischief of such advertisements by excluding from the state all newspapers containing them wherever published, it may yet prevent such increase and spread of the mischief as would result from such advertisements being printed in newspapers published within the state. It may to that extent control the conduct of printers and publishers within its own territory. Such we understand to be the logical result of the decision and reasoning in the Delamater Case by the court of last resort upon such questions."

See, also, section 7, art. 1 (Bunn's Ed. § 9; Snyder's Ed. p. 16) Const. Okla.; section 3, Enabling Act June 6, 1906 (34 Stat. pt. 1, p. 267, c. 3335).

3. The next question arising is as to the remedy invoked. In the case of *Ex parte Allison,* 48 Tex. Cr. R. 634, 90 S. W. 492, 3 L. R. A. (N. S.) 622, the powers of equity by means of an injunction were invoked against gambling houses, by virtue of an express statute, entitled "An act to prevent by means of the writ of injunction at the suit of the state or any citizen thereof the habitual use, actual, contemplated or threatened, of any premises, place, building or part thereof, for the purpose of gaming or of keeping or exhibiting games prohibited by the laws of this state." Gen. Laws 1905, p. 372, c. 153. In that case the court said:

"It is urgently insisted by relator that the injunction granted was without authority of law, because it was an attempt on the part of the court to enjoin the commission of a criminal offense. This contention may be conceded as a general proposition. *State v. Patterson,* 14 Tex. Civ. App. 465, 37 S. W. 478; *Ex parte Warfield,* 40 Tex. Cr. R. 420, 50 S. W. 933, 76 Am. St. Rep. 724. However, the respondent insists that the granting of the injunction in this case was not an attempt to enjoin the commission of a criminal offense, but was an injunction granted against the use of property, the use thereof constituting it a nuisance; and, furthermore, respondent urges that, notwithstanding, under the English system of equity jurisprudence which has come down to us, the courts will not enjoin the commission of crime as crime, yet it is entirely competent for the Legislature to create other matters the

subject of equitable cognizance than those recognized under the general system of equity. With regard to the first proposition, we believe it will be conceded that, where property rights are involved, courts will issue injunctions, notwithstanding it may embrace a crime; or, if it should not be so conceded, we believe, on principle and authority, that this proposition cannot be gainsaid. It will be noted that the act in question is aimed at the restraining of persons from using certain premises or buildings for the purpose of gambling, or of keeping or exhibiting games prohibited by the laws of this state, and does not seek to punish such persons for so using said premises or buildings. As was said in *Warfield's Case,* 40 Tex. Cr. R. 420, 50 S. W. 934, 76 Am. St. Rep. 724: 'An injunction is a mere restraining order, and it will be presumed that the party against whom it is granted will obey it as long as it continues in force; otherwise, if he does not regard it, as the issuance of the writ is a proper exercise of equity, he will move to dissolve it.' A gambling house, under our statute and as recognized by our courts, is a nuisance, and even at common law, as we understand it, such a nuisance could be enjoined at the instance of any one who was injured thereby. Our statute enlarges this right, and assumes that any person within the jurisdiction is injured, and that he can make complaint and have the restraining order issued."

Section 3717 (chapter 56, §1) Wilson's Rev. & Ann. St. 1903, provides:

"A nuisance consists in unlawfully doing some act, or omitting to perform a duty, which act or omission either, first, annoys, injures or endangers the comfort, repose, health, or safety of others; or, second, offends decency; or, third, unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street, or highway; or, fourth, in any way renders other persons insecure in life, or in the use of property."

Section 3718 (chapter 56, § 2):

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

Section 3719 (chapter 56, § 3):

"Every nuisance not included in the definition of the last section is private."

To determine that the advertising or soliciting the sale or purchase of intoxicating liquors to be made without the state was a nuisance, within the purview of the foregoing statutes, would be tantamount to holding that every crime was a nuisance, and unless such act constitutes a nuisance, in the light of the case of *In re Allison, supra*, cited and relied upon by counsel for the state, injunction would not be a proper remedy.

The Legislature of this state not having provided, as in the Allison Case, that the powers of equity might be invoked by the state by means of injunction to restrain or abate such advertisements, we do not feel that we would be justifiable, by judicial construction, in extending such powers to the case at bar. See *Campbell v. Jackman et al.* (Iowa) 118 N. W. 757. The state has an adequate remedy at law. Not only does the prohibition article of the Constitution, but also the enforcing act, prescribe an adequate penalty and punishment to prevent such advertisements or solicitations. A criminal prosecution for such infractions will lie.

Affirmed.

All the Justices concur.