## JONES *et al.* v. STATE.

No. 4053. Opinion Filed December 3, 1912.

Rehearing Denied May 27, 1913.

(132 Pac. 319.)

1. NUISANCE—"Public Nuisance"—Definition. By section 2461, Comp. Laws 1909 (Rev. Laws 1910, sec. 2515), a public nuisance is a crime against the order and economy of the state, and consists in unlawfully doing any act or omitting to perform any duty required by the public good, which act or omission either (1) annoys or injures the comfort, repose, health, or safety of any considerable number of persons; or (2) offends public decency; or (3) in any way renders life or the use of property uncomfortable.

2. SAME. By section 2465, Comp. Laws 1909 (Rev. Laws 1910, sec. 2517), the maintenance of a public nuisance is made a misdemeanor, and punishable as such.

3.   **SAME—Turf Exchange.** Keeping a turf exchange, where persons daily congregate for the purpose of making bets and wagers on horse races run in other states or countries, is under our statute a public nuisance.

4.   **SAME—Injunction.** Section 5771, Comp. Laws 1909 (Rev. Laws 1910, sec. 4881), provides that an injunction may be granted to enjoin and suppress the keeping and maintaining of a common nuisance, and this remedy is available, notwithstanding the criminal laws of the state, to which the keepers of such places are also answerable, have not first been resorted to.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by the State against C. E. Jones and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Jackson & Dial,* for plaintiffs in error.

*W. E. Disney, Co. Atty.,* and *Alvin F. Maloney,* Asst. Co. Atty., for the State.

KANE, J. This was a suit commenced by the county attorney of Muskogee county for the purpose of enjoining the plaintiffs in error, defendants below, from conducting a turf exchange, upon the ground that conducting such an enterprise constitutes a common nuisance, which may be enjoined under section 5771, Comp. Laws 1909 (Rev. Laws 1910, sec. 4881), which reads in part:

"* * * An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance."

Upon the trial, the court below issued a permanent injunction, to reverse which this proceeding in error was commenced.

It is admitted that the turf exchange herein involved is located on one of the principal thoroughfares of the city of Muskogee, where persons daily congregate for the purpose of betting upon horse races run in other states and reported to the proprietor by wire; that the odds on every horse in any

race of importance about to be run, as made at the race course are reported to the defendant before the race, and posted for the information of his patrons; that, as soon as the race has been run, the result is immediately telegraphed to the defendant, whereupon he pays the amount coming to those who placed their money on the right horse. There was evidence to the effect that the proprietor of this turf exchange was acting as the agent for Croker & Co. of Memphis, Tenn., for the purpose of recording bets and wagers, and that he received a commission for said services, but that, we think, is immaterial as far as the law of this case is involved.

Section 2463, Comp. Laws 1909 (Rev. Laws 1910, sec. 2515), provides that:

"A public nuisance is a crime against the order and economy of the state, and consists in unlawfully doing any act or omitting to perform any duty required by the public good, which act or omission either (1) annoys or injures the comfort, repose, health or safety of any considerable number of persons; or (2) offends public decency; or * * * (4) in any way renders life or the use of property uncomfortable."

By section 2465, Comp. Laws 1909 (Rev. Laws 1910, sec. 2517), the maintenance of a public nuisance is made a misdemeanor, and punishable as such. Section 4758, Comp. Laws 1909 (Rev. Laws 1910, sec. 4252), provides that: "The remedies against a public nuisance are: (1) Indictment; or (2) a civil action; or (3) abatement."

There seems to be no serious contention on the part of the plaintiffs in error that the making of bets and wagers in these turf exchanges does not constitute gambling, or that the exchanges themselves are not public nuisances. If we understand counsel correctly, their contention is that, notwithstanding a turf exchange may be a common nuisance, which may be abated by injunction, before such a course can be followed it is incumbent upon the plaintiff, seeking such redress, to present to the court sufficient grounds of an equitable nature before that remedy is available. They say in their brief:

"We concede that, if the defendants in error had shown in their petition, for a writ of injunction in this case, that they had exhausted or resorted to the criminal law without effect, then in that event the defendants in error might have had some cause to ask for the extraordinary remedy by injunction."

In our opinion, keeping a turf exchange, where persons daily congregate for the purpose of making bets and wagers on horse races run in other states or countries is, under our statute, a public nuisance. *Reaves v. Territory of Okla.*, 13 Okla. 396, 74 Pac. 951; *James et al. v. State,* 4 Okla. Cr. 587, 112 Pac. 944, 34 L. R. A. (N. S.) 515, 140 Am. St. Rep. 693; 14 Am. & Eng. Enc. of L. 702. The text of the Encyclopedia reads as follows:

"One who maintains a room at or near a race course, or elsewhere, at which the business of book-making on horse races or other similar events is carried on, and to which persons resort for such purpose, is guilty of maintaining a nuisance."

A great many cases are cited in support of the text.

In *State v. Nease,* 46 Ore. 433, 80 Pac. 897, the question decided was very similar to the one involved herein. The court says:

"The evidence shows that he was the keeper and proprietor of what is called a 'turf exchange,' or poolroom, on one of the principal thoroughfares in the city, at which persons daily congregated for the purpose of betting upon horse races run in other states, and reported to him by telegraph. The odds on every horse in any race of importance about to be run, as made at the race course, were reported to the defendant before the race, and posted for the information of the public on a blackboard in the room used by him. A person desiring to bet would select a horse, pay the amount of his bet, according to the odds appearing on the blackboard, and receive from the defendant a ticket showing the sum to which he would be entitled in case the horse selected by him won. As soon as the race was run, the result would be immediately telegraphed to the defendant, and he would pay the amount coming to the holders of tickets on the winning horse, less a certain per cent. as commission. That such a house is a gaming or gambling house, and punishable as a nuisance at common law,

whether betting on a horse race is a crime or not, has so often and uniformly been held by the courts that it is no longer open to discussion. There is no dissent in the adjudged cases, and it is unnecessary to do more than cite the authorities."

Then follows a long line of cases which seem to sustain the principal case.

Having decided that a turf exchange is a public nuisance, there is little more to be said. The statute (section 5771, Comp. Laws 1909 (Rev. Laws 1910, sec. 4771) provides that an injunction may be granted to enjoin and suppress the keeping and maintaining of a common nuisance, and we can think of no good reason, and none has been suggested by counsel, why this remedy is not available, nothwithstanding the criminal laws of the state, to which the keepers of such place are also answerable, have not first been resorted to. As was said by Judge Richardson in *James v. State, supra*:

"There is no doubt but that the making of bets and wagers in these exchanges constitutes gambling, and the exchanges themselves are common gambling houses, and are therefore nuisances *per se*. *Rex v. Rogier*, 1 B. & C. 272, 8 E. C. L. 117, 2 Dowl. & R. 431; *U. S. v. Dixon*, 4 Cranch, C. C. 107 [Fed. Cas. No. 14,970]; *Vanderworker v. State*, 13 Ark. 700; *State v. Layman*, 5 Har. (Del.) 510; *State v. Black*, 94 N. C. 809; *People v. Weithoff*, 51 Mich. 203 [16 N. W. 442], 47 Am. Rep. 557; *Anderson v. State* (Tex. App.) 12 S. W. 868. See, also, 14 Am. & Eng. Enc. L., page 694, and cases there cited. They are such under our statutes. Under section 5771, Laws 1909 (Rev. Laws 1910, sec. 4881), their operation may be enjoined; they may be abated as provided in chapter 71 of said laws; and under section 2465 of said laws their operation constitutes a misdemeanor, and those who conduct them may be prosecuted criminally and have inflicted upon them the punishment prescribed by section 2032."

Counsel for plaintiffs, in error cite *State ex rel. West, Attorney General, v. State Capital Co.*, 24 Okla. 252, 103 Pac. 1021, as sustaining their contention. We do not believe that case is in point. It was not contended in that case, nor could it be, with any show of reason, that the offense

sought to be enjoined constitutes a public nuisance. The offense there, publishing whisky advertisements, was an ordinary misdemeanor, and the court very properly held:

"To determine that the advertising or soliciting the sale or purchase of intoxicating liquors to be made without the state was a nuisance, within the purview of the foregoing statutes, would be tantamount to holding that every crime was a nuisance, and unless such act constitutes a nuisance, in the light of the case of *In re Allison* [48 Tex. Cr. R. 634, 90 S. W. 492, 3 L. R. A. (N. S.) 622, 13 Ann. Cas. 684], cited and relied upon by counsel for the state, injunction would not be a proper remedy."

Finding no error in the proceedings of the court below, its judgment is affirmed.

All the Justices concur.