## McNULTY et al. v. STATE ex rel. SEAVER, Co. Atty., Tulsa Co.

No. 13811—Opinion Filed July 17, 1923.

(Syllabus.)

**1. Nuisance—Public Nuisance—Dog Races with Gaming.**

Operating premises for the purpose of conducting dog races on which books are made and where persons congregate daily for the purpose of making bets and wagers on the races run, and where such bets and wagers are openly and publicly made in the presence of the persons assembled, is, under our statutes, a public nuisance.

**2. Same—Injunction to Suppress.**

An injunction may be granted to enjoin and suppress the keeping and maintaining of a common nuisance, and this remedy is

available under the provisions of secs. 420 and 7877, Comp. Stat. 1921, notwithstanding the persons operating such a place are also liable for criminal prosecution, and notwithstanding the particular statute defining the crime may not provide for injunctive relief for the purpose of suppressing the operation of the place.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Injunction by the State, on the relation of W. F. Seaver, County Attorney against M. J. McNulty, Jr., and others, to abate nuisance. Judgment for plaintiff, and defendants bring error. Affirmed.

M. A. Breckenridge, Chas. R. Bostick, and Lee Daniel, for plaintiffs in error.

W. F. Seaver, Co. Atty., for defendant in error.

COCHRAN, J. This action was instituted by the county attorney of Tulsa county to have the Mid-Continent Park declared a nuisance and abated. The petition contained two counts. The first count alleged that the premises were being used for the purposes of violating the prohibition law, and the second cause of action alleged that the defendants used certain premises for conducting dog races on which books were made and money was bet and wagered, won and lost, in violation of the laws of the state of Oklahoma, and that a dance hall and cafe were operated on said premises as a public resort where lewd and lascivious persons of both sexes congregated for immoral purposes, and that the conduct of persons so assembled rendered the life, peace, and quietude of the citizens of the community unbearable and uncomfortable; and that the acts complained of constituted a public and common nuisance, and offended the public and common decency of the community where the premises were located, and offended the peace, quietude, good citizenship and decency of the state of Oklahoma. A temporary injunction was issued and the Mid-Continent Park was ordered closed until further order of the court. Defendants filed a response to the petition, and upon a trial of the issue, the court denied the application to dissolve the temporary injunction, from which the defendants have appealed.

The only question presented for our consideration is that portion of the judgment declaring the use of the premises for the purposes of conducting the dog races, on which racing books were made and money bet and wagered, to be a public nuisance and abating the same. The finding of the trial court in regard to this matter was as follows:

"The testimony on the part of these defendants, the persons seeking to have this injunction modified, clearly shows that gambling is permitted out there openly, and you might say notoriously. There is no effort to conceal it, but they admit that bets, and wagers are laid upon the result of these dog races and that people win and lose money out there at the dog races, and that that is carried on in the presence of persons who assemble there"—and the court concluded as follows:

"Gaming has always been an offense at common law and from a careful reading of our statute, it is also an offense in this state, and a wager laid upon the results of any contest of chance, skill or strength between men or beasts, or men and beasts, constitutes gaming, and it has been defined by Mr. Blackstone as an offense of the most alarming nature, tending by necessary consequence to promote idleness, theft, and debauchery among those of the lower class, and that among persons of a superior rank it has frequently been attended with sudden ruin and destruction and abandoned prostitution of every principle of honor and virtue, and has been characterized by our appellate courts as a crime against the public decency and as being injurious to public morals and as an offense which agitates and disturbs the public peace. And such I find to be the acts complained of in this case, and it is, in my opinion, therefore a nuisance."

The defendants contend, first, that the facts as found by the trial court do not constitute a crime under the Oklahoma statutes, and in this connection it is insisted that chapter 185, Session Laws 1913, which prohibited book-making, is inoperative because a referendum petition was filed with the Secretary of the State Election Board, and chapter 185, Session Laws 1913, was submitted to an election held on August 4, 1914; that the facts in connection with the election so held on this question are the same as the facts in connection with the submission of chapter 128, Session Laws 1913, and in Ex parte Smith, 49 Okla. 716, 154 Pac. 521, this court held that the election was invalid, and that the filing of the referendum petition suspended the operation of the law until the election was had thereon. It is unnecessary to determine whether chapter 185 of the Session Laws of 1913 is operative or not, as the facts found by the trial court are sufficient to justify the conclusion that the use of the premises for conducting dog races on which racing books were made and money publicly bet, constitutes a public nuisance.

This court and the Criminal Court of Appeals have heretofore determined this question in no uncertain terms. In James v. State, 4 Okla. Cr. 587, 112 Pac. 944, the court said:

"There is no doubt but that the making of bets and wagers in these exchanges constitutes gambling, and the exchanges themselves are common gambling houses, and are therefore nuisances per se. * * * They are such under our statutes. Under section 5771, Snyder's Comp. Laws Okla. 1909, their operation may be enjoined; they may be abated as provided in chapter 71 of said laws; and under section 2465 of said laws, their operation constitutes a misdemeanor, and those who conduct them may be prosecuted criminally and have inflicted upon them the punishment prescribed by section 2032."

In State v. Lawrence, 9 Okla. Cr. 16, 130 Pac. 508, the court said:

"Every appellate court in Christendom has characterized gaming as a crime against public decency and as being injurious to public morals, and as an offense which agitates and disturbs the public peace. This court has announced its views on this subject in no uncertain terms in the case of James v. State, 4 Okla. Cr. 587, 112 Pac. 944."

In Jones v. State, 38 Okla. 218, 132 Pac. 319, the following language is used in the syllabus:

"Keeping a turf exchange, where persons daily congregate for the purpose of making bets and wagers on horse races run in other states or countries, is under our statute a public nuisance."

In the Jones Case, the following from 14 A. & E. Enc. of Law, 702, is quoted:

"One who maintains a room at or near a race course, or elsewhere, at which the business of book making on horse races or other similar events is carried on, and to which persons resort for such purpose, is guilty of maintaining a nuisance."

See, also, Balch v. State, 65 Okla. 146, 164 Pac. 776.

Having concluded that the operation of the premises constituted a public nuisance, the case is not controlled by State ex rel. West, Atty. Gen., v. State Capital Co., 24 Okla. 252, 103 Pac. 1021, and State ex rel. West, Atty. Gen., v. Journal Company, 25 Okla. 180, 105 Pac. 655: but the same distinction is to be made as made in Jones v. State, supra. in which the following language was used:

"Counsel for plaintiffs in error cite State ex rel. West, Attorney General, v. State Capital Co., 24 Okla. 252, 103 Pac. 1021, as sustaining their contention. We do not believe that case is in point. It was not contended in that case, nor could it be with any show of reason, that the offense sought to be enjoined constitutes a public nuisance. The offense there, publishing whisky advertisements, was an ordinary misdemeanor, and the court very properly held: 'To determine that the advertising or soliciting the sale or purchase of intoxicating liquors to be made without the state was a nuisance, within the purview of the foregoing statutes, would be tantamount to holding that every crime was a nuisance, and unless such act constitutes a nuisance in the light of the case of In re Allison (48 Tex. Cr. R. 634, 90 S. W. 492 * * *), cited and relied upon by counsel for the state, injunction would not be a proper remedy.' "

In the Jones Case, the court, after making the above reference to the State Capital Case, said:

"Section 2463, Comp. Laws 1909 (Rev. Laws 1910, sec. 2515), provides that: 'A public nuisance is a crime against the order and economy of the state, and consists in unlawfully doing any act or omitting to perform any duty required by the public good, which act or omission either (1) annoys or injures the comfort, repose, health or safety of any considerable number of persons; or (2) offends public decency; or * * * (4) in any way renders life or the use of property uncomfortable.'

"By section 2465, Comp. Laws 1909 (Rev. Law 1910, sec. 2517), the maintenance of a public nuisance is made a misdemeanor and punishable as such. Section 4758, Comp. Laws 1909 (Rev. Laws 1910, sec. 4252), provides that: 'The remedies against a public nuisance are: (1) Indictment; or (2) a civil action; or (3) abatement.' "

That a public nuisance of this character may be abated by injunction is determined in sections 420 and 7877, Comp. Stats. 1921. In this connection the following language is used in James v. State, supra:

"Having decided that a turf exchange is a public nuisance, there is little more to be said. The statute (sec. 5771, Comp. Laws 1909; Rev. Laws 1910, sec. 4771), provides that an injunction may be granted to enjoin and suppress the keeping and maintaining of a common nuisance, and we can think of no good reason, and none has been suggested by counsel. why this remedy is not available, notwithstanding the criminal laws of the state, to which the keepers of such place are also answerable, have not first been resorted to."

Other cases to the same effect are: State v. Nease, 47 Ore. 433, 80 Pac. 897; James v. State, supra; Hill v. State, 45 Okla. 367, 145

Pac. 492; Balch v. State, supra; Ex parte Roper (Tex.) 134 S. W. 334.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, BRANSON, and HARRISON, JJ., concur.