## OKLAHOMA KENNEL CLUB et al. v. STATE ex rel. BISHOP, County Atty.

No. 19885. Opinion Filed March 1, 1932.

H. H. Edwards, A. S. Wells, and Tom C. Greer, for plaintiffs in error.

Edwin Dabney, Atty. Gen., V. P. Crowe, Asst. Atty. Gen., and Homer Bishop, County Atty., for defendant in error.

HEFNER, J. This is an action brought in the district court of Seminole county by the state against the Oklahoma Kennel Club, a corporation, to enjoin it from conducting dog races in that county. It is alleged in the petition that defendant was conducting dog races at which books were made and persons were permitted to congregate for the purpose of making bets and wagers on the races run by dogs; that the bets and wagers were openly and publicly made and that money was won and lost on the result of the races. The petition further alleges that defendant was conducting these races in violation of section 1935. C. O. S. 1921, and, by reason thereof, was maintaining a nuisance which was subject to abatement by injunction under section 420. Defendant denied that it was operating its races in violation of section 1935, supra, and prayed that the injunction be denied. The case was tried on an agreed statement of facts and resulted in a judgment in favor of plaintiff enjoining defendant from further operating its dog races and from maintaining its dog race track in violation of said section.

Defendant has appealed and contends that the judgment is contrary to law. It is agreed that defendant had leased a five-acre tract of land in Seminole county and had erected a race track thereon; that it was engaged in conducting dog races at the time the action was brought. The race track is a circle about 20 feet wide. It is equipped with an artificial rabbit run on

a track by an electric motor. The dogs entered in the races attempt to overtake the rabbit. An admission fee of 50 cents is charged all persons attending the races. The dogs entered are not owned by the club, but by various persons who enter them. A purse for the owners of the dogs finishing first, second, and third is agreed upon by defendant and owners of the dogs entered in advance of each race. The per cent. of the purse which the owner of each dog receives is also agreed upon. The payment of these amounts is guaranteed to the owners by the club. The races are conducted on what is known as the donation plan. Under this system, any person who desires to do so may make a donation to the purse and when he makes his donation he selects a dog upon which he chooses to make his donation. On making the payment, he receives a ticket showing the amount donated and the number of the dog he has selected. Usually eight dogs are entered in the races. The proceeds donated on each race are distributed, first, 10 per cent. to the management; second, to the owners of the dogs the amounts agreed upon in advance as a purse; and the balance is then distributed to the holders of the tickets on the dogs finishing first, second, and third. The holders of the tickets on any other dogs receive no part of the money. The manner in which the money is distributed to the holders of the tickets is illustrated by the following paragraph of the stipulation:

"If the donation is $100 the management deducts $10, which leaves $90 in the pot, then * * * if the purse is $65 there remains, after the purse is paid and the expenses, $25. The man who holds the number on dog No. 1 * * * is distributed 60 per cent. of the $25 as indicated by the amount contributed, the man that holds the ticket on the dog that runs second * * * 30 per cent. of the $25, the amount being controlled by the amount contributed, and so on. * * * And it is further agreed that the persons who select the numbers of the dogs which do not win in the race neither first, second, or third place, are not entitled to receive after the race any portion of the money donated by them to said fund."

It is the contention of plaintiff that under the agreed statement of facts defendant was operating in violation of section 1935, C. O. S. 1921, which, in part, provides as follows:

"That it shall be unlawful for any person or persons or association of persons, corporation or corporations, to bet or wager by means of books, machines, or any other devices, or to occupy any room, shed, tenement, or building, or any part thereof, or to occupy any place upon any grounds with books, apparatus, or paraphernalia for the purpose of recording or registering bets or wagers or of selling pools, or making books or mutuals upon the result of any trial of speed or power of endurance of animals, or beasts; * * * that any person or persons or association of persons, corporation or corporations violating the provisions of this act shall be fined not less than $200 nor more than $500, one-fourth of which shall be paid to the informer, and be imprisoned not less than 30 days nor more than 90 days."

If operating in violation of this section, defendant was guilty of maintaining a nuisance which might be abated by injunction, under the provisions of section 420, supra.

In the case of James v. State, 4 Okla. Cr. 587, 112 P. 944, the following rule is announced:

"A house or place kept for the purpose of enabling persons to place bets or wagers upon horse races is a common gambling house, is a nuisance per se and those who conduct it are indictable and punishable under section 2465 of Snyder's Comp. L. Okla. 1909."

In the case of McNulty v. State, 90 Okla. 267, 217 P. 467, this court said:

"Operating premises for the purpose of conducting dog races on which books are made and where persons congregate daily for the purpose of making bets and wagers on the races run, and where such bets and wagers are openly and publicly made in the presence of the persons assembled, is, under our statute, a public nuisance."

The second paragraph of the syllabus is as follows:

"An injunction may be granted to enjoin and suppress the keeping and maintaining of a common nuisance, and this remedy is available under the provisions of sections 420 and 7877, Comp. Stat. 1921, notwithstanding the persons operating such a place are also liable for criminal prosecution, and notwithstanding the particular statute defining the crime may not provide for injunctive relief for the purpose of suppressing the operation of the place."

Defendant urges that the agreed statement of facts shows that it was not maintaining a place where people were permitted to congregate for the purpose of making bets and wagers on the races of the dogs and that people attending the races were not betting on the races, but were merely donating money to purses to be paid to the owners of the dogs which finished first, second, and third in the races. We cannot agree with this contention. Under the stipulation the parties making the donation selected the dogs upon which they were

making the donation. They might either select a dog to finish first, second, or third. They placed their money on the various dogs with the expectation of receiving in return more money than they placed. If the dog selected finished either first, second, or third, they would receive in return more money than they donated to the fund, but those who selected the dogs which finished neither first, second, nor third lost all the money they donated. Thus, it seems clear that the parties making the donations did so with the expectation of either winning or losing on the races, and this, in our opinion, constitutes the wagering of money upon the results of the races, which is in violation of section 1935, supra.

The Florida Supreme Court, in Reinmiller v. State, 111 So. 633, speaking of dog races conducted under a plan similar to the one used in the instant case, said:

"It is plainly the wagering of money upon the result of the contest of speed of dogs, which contests are conducted by the association."

And after stating that no citation of authority is required to sustain the position that the proceedings constituted the wagering of money upon the result of the races, concluded as follows:

"Indeed, it is so clear that such is a fact that the subterfuge resorted to becomes amusing."

In the case of Pompano Horse Club v. State (Fla.) 111 So. 801, the same court said:

"When a group of persons, each of whom has contributed money to a common fund and received a ticket or certificate representing such contribution, adopt a horse race, the result of which is uncertain, as a means of determining, by chance, which members of the group have won and which have lost upon a redivision of that fund, each contributor having selected a stated horse to win such race, the redeemable value of the certificates so obtained and held by the contributors to such fund being varied or affected by the result of such race, so that the value of some is enhanced, while that of others is reduced or destroyed, the original purchase price of all having been the same, those who chose the winning horse being paid, from the fund so accumulated, more than they contributed thereto, by dividing amongst them the money contributed by those who chose losing horses and who therefore receive nothing, that process constitutes a 'game of chance'; and those who buy, sell, or redeem such certificates, for the purposes and in the manner stated, are 'engaged' in such game within the contemplation of section 5639, Rev. Gen. Stat. 1920. The acts just outlined also constitute 'gambling' as defined and prohibited by section 5514, Rev. Gen. Stat. 1920."

Under these authorities, defendant was conducting the races in violation of the above section and the court committed no error in granting the injunction.

Judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY and SWINDALL, JJ., absent.